## (January 22, 1968)

■ In the Matter of WESTCHESTER REFORM TEMPLE, Appellant, v. FRANCIS T. GRIFFIN, as Building Inspector of the Village of Scarsdale, Respondent.

BENJAMIN, J. (dissenting). In March, 1965 the plaintiff, Westchester Reform Temple, applied to the Planning Commission of the Village of Scarsdale for approval of a site plan for a proposed expansion of its building, which is located in a Residence A-2 District under the Scarsdale Village Code. This plan was approved conditionally in June, 1965. The Temple complied with all the conditions by April 21, 1966 and on that date filed its final plans with the Building Inspector of the village. He reviewed the final plans and transmitted them to the Board of Architectural Review of the Village for approval. On May 10, 1966, before the board approved the plans, the village amended its code so as to give the Planning Commission new, broad powers to prescribe the dimensions, setbacks and parking facilities of nonresidential buildings in Residence A districts. On May 25, 1966 the Board of Architectural Review approved the Temple's final plans. On September 20, 1966 the Temple asked the Building Inspector to issue a building permit, but he refused to do so, saying that he could not issue it until the Planning Commission prescribed the dimensions, setbacks, etc., of the proposed expanded building, pursuant to the May 10, 1966 amendment of the code, and until there was a determination that the plans complied with such prescriptions.

The Temple did not then reapply to the Planning Commission. Instead, on September 23, 1966 it commenced this proceeding pursuant to CPLR article 78 to compel the Building Inspector to issue the permit, asserting that the May 10, 1966 amendment of the code was unconstitutional on various grounds. The petition was returnable October 18. On October 11 the village again amended the code so as to specify certain additional factors to be considered by the Planning Commission when considering restrictions to be imposed on the expansion of non-residential buildings.

The Special Term held that the amendments were valid and it dismissed the petition. In my opinion this determination was erroneous.

As previously indicated, the amendment of May 10, 1966 dealt with non-residential buildings in Residence A districts. It gave the Planning Commission practically untrammeled power to prescribe the maximum height, length and width of each such building, to prescribe the maximum percentage of the lot that each might occupy, to prescribe the minimum setback of each such building from the front, rear and side lines of the plot and to prescribe the minimum number of parking spaces that each such building must provide. The only specific restrictions on this sweeping grant of power were provisions that no such building may be taller than the maximum height permitted by the code for residential buildings and that at least one parking space must be provided for each five seats in the building. Apart from those two specific guidelines, the amendment contained only an amorphous, general statement of the factors to be considered by the Planning Commission when imposing such requirements on a nonresidential building, namely: " The general character of the neighborhood, the size and location of buildings in the vicinity, the use to be made of the proposed building * * * and traffic conditions and parking facilities in the area ".

It further stated that the requirements

"shall be consistent with the public health, safety and general welfare of the community, and shall be designed, insofar as practicable, to avoid or minimize:

(i) creation of or seriously aggravating a traffic or other hazard,

(ii) any impairment of the use, enjoyment or value of properties in surrounding areas,

(iii) any incongruous or detrimental change in the prevailing character of the neighborhood, and

(iv) any deterioration of the appearance of the area."

The October 11, 1966 amendment further embellished this sweeping grant of power to the Planning Commission, by providing that with respect to a proposed expansion of an existing nonresidential building it should also take into consideration

" (i) changes which have taken place since the erection of such existing building * * * which have led to the proposed expansion * * *,

(ii) any anticipated future need for further expansion * * *,

(iii) whether the proposed expansion * * * is for educational, religious or benevolent purposes,

(iv) whether any curtailment of or relocation of the proposed or existing facilities would result in unnecessary hardship,

(v) alteratives, if any, and the relative cost thereof, available to provide for the proposed expansion or enlargement, and

(vi) the size and shape of the lot, the size, shape and location of existing non-residential buildings and the relationship thereto of the proposed expansion "

It added that in such cases the Planning Commission "shall attempt to establish a reasonable balance between any unnecessary or unreasonable hardship to the users of the existing facilities found to exist after consideration of the factors set forth above, and a reasonable modification of the standards otherwise applicable to new non-residential buildings."

In my opinion, these zoning amendments are invalid because they lack adequate standards to govern the Planning Commission's exercise of its discretion.

The "factors" listed therein for consideration by the Planning Commission are subordinate to the constitutional right of the free exercise of religion; and they bear no substantial relation to the health, safety and general welfare of the community (*Matter of Diocese of Rochester* v. *Planning Bd.*, 1 N Y 2d 508). When they are eliminated, there are no guidelines left in the ordinance except generalizations about "health, safety and general welfare". Certainly, detailed, specific standards as to building sizes, setbacks, sideyards, and percentages of lots occupied are "reasonably practicable" in the light of the area being regulated by this ordinance; and the failure to include them therein renders unconstitutional the delegation of discretionary power therein contained (cf. *Matter of City of Utica* v. *Water Pollution Control Bd.*, 5 N Y 2d 164, 168–169). The absence of such specific standards in this ordinance leaves the Planning Commission free to discriminate by *ad hoc* "legislation" whenever it so desires. That this is so is clearly shown by the Planning Commission's acts in this very case, when the Temple subsequently reapplied to it for approval of the site plan.

So broad and unrestricted a grant of legislative power to an administrative agency cannot be sustained by the courts and it consequently is our duty to strike it down.

In view of the invalidity of these zoning amendments, it was improper for the Building Inspector to refuse the issuance of a building permit until they had been complied with. The Temple fully complied with the ordinance as it existed prior to the adoption of these invalid amendments and the Temple consequently is entitled to the building permit that it seeks.

In addition, since the very zoning amendments discussed represent an unconstitutional abridgement of petitioner's right to the free exercise of religious worship, and the restrictions thereof must be annulled as to petitioner (*Matter of Westchester Reform Temple* v. *Brown*, 29 A D 2d 677), the provisions thereof may not, in my opinion, be invoked in bar of petitioner's right to proceed herein.

Brennan, Acting P. J., Hopkins and Munder, JJ., concur in decision; Rabin and Benjamin, JJ., dissent and vote to reverse the judgment, to annul respondent's refusal to issue a building permit to appellant and to direct the issuance of such permit, with opinion by Benjamin, J., in which Rabin, J., concurs.

Judgment of the Supreme Court, Westchester County, dated February 15, 1967, affirmed, with costs. [52 Misc 2d 726.]