Daniel Gr. Albert, J.
Plaintiff is the owner of a residentially improved parcel of real property, a portion of which lies within the unincorporated area of the defendant Town of North Hempstead and abuts property, lying completely within that unincorporated area, owned by the defendant Malman.
The latter property, approximately 163 acres, constitutes the most southerly portion of a larger tract commonly known as the Port Washington “ sand pits
In this action, plaintiff seeks a judgment declaring the invalidity of certain amendments to the building zone ordinance and map of the defendant town which purported, respectively, *573 to create a “Planned Industrial Park” district (hereinafter sometimes referred to as the “ P.I.P. ” district) and to rezone the property owned by the defendant Malman so as to include it within such district. Ancillary injunctive relief is also sought.
Plaintiff’s challenge to the validity of these legislative acts is predicated upon contentions that the amendments to the ordinance were not made ‘ ‘ in accordance with a comprehensive plan ”, as mandated by section 263 of the Town Law; that their adoption, although preceded by public hearings held pursuant to notice, was not preceded by public hearings 11 at which parties in interest and citizens shall have an opportunity to be heard” (Town Law, § 264), and that the rezoning of defendant Malman’s property constituted “spot zoning”.
For reasons to be stated hereinafter, the court finds no merit in any of these contentions. The contentions are presented with both imagination and vigor by plaintiff’s attorneys (plaintiff, it may be noted, parenthetically, is a senior partner in the law firm which appears herein on his behalf), who have virtually inundated the court with lengthy memoranda of law and volumes of exhibits. The issues, however, do not appear to be as complex or their resolution as difficult as the flood of evidence and legal argument advanced by plaintiff’s counsel seem to indicate.
As already indicated, the subject property is the most southerly 163 acres of the Port Washington sand-pit area, a tract originally comprising 1,250 or 1,300 acres located on the westerly side of West Shore Road, north of Northern Boulevard, in the unincorporated area of the Town, of North Hempstead. The tract originally extended north to the point where the Port Washington peninsula or “neck” meets Hempstead Harbor and Manhasset Bay.
Prior to 1959, the entire area was zoned “Residence 0” which, in substance, limited use to one- or two-family detached dwellings on plots no smaller than 5,000 square feet. In 1959, it was rezoned to ‘ ‘ Residence AAA ’ ’, the principal use of which would be for single family dwellings on minimum plots of 20,000 square feet. The property was never developed for residential purposes but was the site of sand excavation mines which operated, apparently, as vested nonconforming uses.
In 1961, the County of Nassau, pursuant to its power of condemnation, acquired title to the most northerly 650 acres for park purposes. In the subsequent proceeding to fix the value of the condemned property, the court (Hogan, J.) addressed itself to the propriety of the large-plot residential zoning of *574 that portion of the sand-pit tract and held, for reasons which plaintiff concedes would apply to the zoning of the entire sandpit area, that any zoning more restrictive than the limitation on surrounding property to residential uses on 6,000 square foot plots would be “ improper ” and a “ de facto confiscation ” (Matter of County of Nassau, 47 Misc 2d 593, 605).
In reaching that conclusion, Mr. Justice Hogan noted, among other things, a study of available industrial sites within the county made under the auspices of the Nassau County Planning Commission and quoted (p. 603) the following portion of that report:
11 c rpb.ere are certain non-conforming uses along Manhasset Bay that should be included in the industrial zone.
“ ‘ The greatest amount of non-conforming uses are the 800 acres of sand mining operations adjacent to Hempstead Harbor. When the sand supply is depleted, this area could provide an ideal setting for a large industrial complex. The sand bank has created a natural buffer from the residences to the west and there will be a county park on the north boundary.
“ ‘ Water access would be available for waterfront plots on either side of the town beach. There is no rail service.
“ ‘ The main route leading through this area is 'Shore Road which is being relocated and improved. ’ ”
(Parenthetically, in connection with the last statement quoted supra, it should be noted that Shore Road is the westerly boundary of the subject property, and that plaintiff’s property, as well as the residential community of which it is a part, lies entirely to the east of the subject property. Therefore, it seems patently clear that plaintiff’s concern over increased traffic in his vicinity created by the changed zoning of the subject property is without any factual foundation.)
In 1966, the defendant Town Board revised, amended and re-enacted the text of the town’s building zone ordinance and map. No change was made in the zoning of the sand-pit area at that time, however, apparently because a separate study of its problems and potential development had been undertaken by a planning consultant retained by the Town Board.
In August, 1967, following a public hearing held pursuant to notice, the Town Board further amended the ordinance by adopting, a new section, article XVI-A, which created ‘ ‘ Planned Industrial Park Districts ” and provided standards, such as building height, minimum lot area, and setback requirements for developing property within such districts. The ordinance set forth a limited number of permitted uses, all of which were *575 “ conditional ” and required authorization by the Town Board.
At the time this ordinance was adopted, no change was made in the building zone map and, therefore, no property within the town was placed in the newly created 11 P.I.P. ’ ’ district.
In October .and December of 1967, the Town Board conducted public hearings on its proposal to rezone all of the remaining sand-pit area not taken by the county as “ P.I.P.”, except for 23 acres at the southwest corner (part of the defendant Malman’s property) which it was then contemplated would be developed as a shopping center. In April, 1968, the Town Board amended the zoning map and designated only the southerly portion of the sand-pit area (i.e., 140 acres of the defendant Malman’s property) as “ P.I.P.” In May of that year, following notice and a public hearing, the remaining 23 acres of the Malman property were also rezoned ‘1 P.I.P. ’ ’
Finally, in April, 1969, the defendant Town Board amended article XVI-A of the ordinance by incorporating therein one additional “conditional use ” and by setting forth detailed standards limiting the emission of vibrations, noise, odors, air pollutants, and radioactive, electromagnetic and other waste materials.
The main thrust of plaintiff’s first contention, that these amendments to the zoning ordinance and map were not made in accordance with .a “comprehensive plan” (Town Law, § 263) is based on the fact that, prior to these changes, the Town Board had commissioned a firm of planning consultants to make a study to be utilized as the basis for a proposed “master plan”, and that that study was not completed and presented to the Town Board until March, 1969, after enactment of the original ordinance creating the ‘1 P.I.P. ’ ’ district, and after the rezoning of the defendant Malman’s property.
Plaintiff argues that the term ‘1 comprehensive plan ’ ’ as used in section 263 of the Town Law means such a * ‘ master plan” as was commissioned by the Town Board herein. In other words, plaintiff’s argument is that the Town Board was required to have that study before it, prior to enactment of the amendments and map changes challenged herein and prior to the holding of public hearings on the proposed changes.
The main support for this interpretation of section 263 of the Town Law is said to be the opinion in Udell v. Haas (21 N Y 2d 463). ' This court does not agree with plaintiff’s interpretation of that decision, which involved the validity of an amendment to the building zone ordinance of the Village of Lake Success. On the contrary, rather than holding or even *576 suggesting that the ‘1 comprehensive plan ’ ’ must have an existence separate and prior to enactment of the zoning scheme or amendments thereto, the Court of Appeals stated that the search for the Village of Lake Success ’ ‘ ‘ ‘ comprehensive plan ’ is relatively‘easy. It may be found both in the village’s zoning-ordinance and in its zoning map ” (Udell v. Haas, 21 N Y 2d 463, 472).
In attempting to clarify the meaning of section 263 of the Town Law, the Court of Appeals also stated: “ No New York case has defined the term 1 comprehensive plan ’. Nor have our courts equated the term with any particular document. We have found the 1 comprehensive plan ’ by examining all relevant evidence (Rodgers v. Village of Tarrytown, 302 N. Y. 115, 122, supra; Thomas v. Town, of Bedford, 11 N Y 2d 428, 434-435, supra). As the trial court noted, generally New York cases * have analyzed the ordinance * * * in terms of consistency and rationality ’ (40 Misc 2d 265, 267-268). While these elements are important, the 1 comprehensive plan ’ requires that the rezoning should not conflict with the fundamental land use policies and development plans of the community (see Santmyers v. Town of Oyster Bay, 10 Misc 2d 614, 616; Linn v. Town of Hempstead, 10 Misc 2d 774; Place v. Hack, 34 Misc 2d 777; Walus v. Millington, 49 Misc 2d 104). These policies may be garnered from any available source, most especially the master plan of the community, if any has been adopted, the zoning- law itself and the zoning map.” (Udell v. Haas, supra, 21 N Y 2d 463, 471-472).
In the instant case, there was no “ master plan ” adopted at the time the amendments to the zoning ordinance were enacted. There was, however, a ‘ ‘ comprehensive plan ’ ’, consisting of the existing zoning ordinance and map and the various documents and studies, some of which have been referred to herein, and all of which pointed to the present and future needs of the county and town to provide suitable sites for industrial growth, the increasing scarcity of land available for that purpose, and the feasibility of developing the sand-pit area to help satisfy those needs. Clearly, in providing for the creation of ‘ ‘ P.I.P. ’ ’ districts and in envisioning the use of the sand-pit area for such development, the defendant Town Board acted pursuant to a ‘‘ comprehensive plan”. There is no statutory or decisional requirement, and logic dictates that there not be, that a Town or Village Board adopt a master plan before enacting or amending a zoning- ordinance, or that, having undertaken a study designed to lead to possible adoption *577 of a master plan, that it leave uncorrected obviously unsuitable zoning, such as that which relegated the subject property to residential uses only (cf. Matter of County of Nassau, 47 Misc 2d 593, 605, supra), until the culmination of that study and/or adoption of a master plan.
For the reasons already stated, it seems equally clear that plaintiff’s second contention (the claim that the planning studies should have been presented and made public prior to the conduct of the public hearings) is equally without merit.
Finally, the court rejects plaintiff’s claim that since the board rezoned only the defendant Malman’s property, after conducting hearings at which consideration was given to rezoning all of the sand-pit area (other than that taken by the county for park purposes or earmarked for possible future park development), it is guilty of “ spot-zoning ”.
The rezoning of a tract as large as that involved herein and located as it is, is not the equivalent of “ singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners ” (Rodgers v. Village of Tarrytown, 302 N. Y. 115, 123) and is not “ spot ” or “piecemeal” zoning (see also, Shepard v. Village of Shaneateles, 300 N. Y. 115). There is, in the record of this case, not the slightest suggestion that the rezoning of the subject property was prompted by an intent to benefit the defendant Malman, or that it was initiated at his instance.
Accordingly, the court finds no merit in plaintiff’s contentions, and judgment will be granted to defendants, with one bill of costs, declaring the validity of the amendments to the building zone ordinance and map which are the subject of this action.