DUR-BAR REALTY COMPANY, Appellant, v CITY OF UTICA, Respondent.

Fourth Department, April 7, 1977

*Rossi, Cohen, P. C., (Daniel Cohen* of counsel), for appellant.

*Joseph R. Mascaro, Corporation Counsel (Charles Brown* of counsel), for respondent.

GOLDMAN, J. Plaintiff-appellant Dur-Bar Realty Company commenced this action for a declaratory judgment that the "Land Conservation District" provisions of the zoning ordinance of the City of Utica (Ordinance No. 39 of 1967) are unconstitutional and void, both on their face and as applied to plaintiff's parcel within the district.

The subject ordinance divides the City of Utica into 14 zoning districts, the boundaries of which are set forth on a zoning map annexed to the ordinance. Property owners in any district are limited to those uses of their property enumerated in the ordinance. Some of the enumerated uses in some of the districts are designated "permitted principal uses" and are allowed to property owners as of right without the necessity of obtaining any permit. The ordinance enumerates certain additional uses, called "permitted accessory uses", which are incidental or related to the principal uses and are also allowed as of right. Other enumerated uses, styled "special uses", are allowed only if the landowner obtains a special use permit from the Zoning Board of Appeals.

The property which is the subject of this action was purchased by plaintiff in 1973. Bounded on one side by a line along the center of the Mohawk River, the parcel lies entirely within the flood plain of the river in a district denominated in the ordinance as a "Land Conservation District". The ordinance does not provide for any permitted principal or permitted accessory uses in this district, but only the following five special uses: "Farm and other agricultural operations"; "Parks, golf course, athletic field and other similar uses";

"Essential services"; "Disposal facilities, landfill operations and similar uses"; "Marina".

After purchasing the property, plaintiff made two applications for special use permits and both were denied. The second denial, according to plaintiff's brief, came after local planning authorities "had received a letter from the New York State Regional Supervisor of Environmental Analysis of the Department of Environmental Conservation stating that it would never permit plaintiff-appellant to fill his property because it was located in the flood plain". Plaintiff alleges in its complaint that any reasonable use of the parcel would require filling all or substantially all of it, but plaintiff concedes that because of the parcel's location any filling would require a permit from the State Department of Environmental Conservation (Environmental Conservation Law, § 15-0505).

The matter was submitted to Special Term for a decision on so much of the complaint as challenged the legality and constitutionality of the ordinance on its face. For that purpose the parties orally stipulated that the facts set forth in the pleadings and both parties' memoranda of law would be taken as true. Special Term dismissed the complaint, and plaintiff appeals.

Plaintiff first contends that the "Land Conservation District" provisions of the ordinance constitute zoning which is not "in accord with a well considered plan" as required by subdivision 25 of section 20 of the General City Law and are therefore void as *ultra vires* the enabling legislation. The Court of Appeals has recognized that the requirement of a "comprehensive plan" for village zoning under section 177 of the former Village Law is not "equated * * * with any particular document" and "may be found both in the village's zoning ordinance and in its zoning map" *(Udell v Haas,* 21 NY2d 463, 471-472; see, also, *Daum v Meade,* 65 Misc 2d 572, 575-576, affd 37 AD2d 691, app dsmd 29 NY2d 640; *Walus v Millington,* 49 Misc 2d 104, 108-109, affd 31 AD2d 777 [interpreting "comprehensive plan" requirement for zoning under Town Law, § 263]). By analogy, the same is true of the requirement of a "well considered plan" under subdivision 25 of section 20 of the General City Law. Here the ordinance is comprehensive indeed, containing detailed use provisions and a carefully drawn map which evince orderly and painstaking forethought; in addition the ordinance contains a recitation that it is "based on the Master Plan for the City of Utica"

(City of Utica Zoning Ordinance, § 1.300), as well as a detailed statement of purposes (id., § 1.500 to 1.590). Plaintiff, however, relies on *Marshall v Village of Wappingers Falls* (28 AD2d 542) for the argument that because the Land Conservation District provisions allow development by special permit only and do not authorize any use as of right, "there is no comprehensive plan * * * but simply a procedure providing for a series of isolated decisions by the Board". In *Wappingers Falls* the zoning ordinance established a "Planned Residential District" in which there were no principal permitted uses as of right but 12 uses were authorized by special permit, to be issued by the board of appeals "subject to applicable regulations of this ordinance". The Second Department held that the creation of the "Planned Residential District" was *ultra vires* because it "was not zoning in accordance with a comprehensive plan but rather was a device to permit, in effect, lot-by-lot zoning". The court also held that the provisions governing the issuance of special permits were invalid for failure to prescribe "any standard or rule by which action by [the board of appeals] is to be governed" (28 AD2d, at pp 542-543). We do not, however, read *Wappingers Falls* as holding broadly that the failure to allow any uses as of right always demonstrates a lack of a comprehensive plan. Here the subject parcel lies in a flood plain and therefore presents unique use control problems. Schedule I of the present ordinance recites as a purpose of the Land Conservation District "To delineate those areas where substantial development of the land in the form of buildings or structures is prohibited due to * * * special or unusual conditions of topography, drainage, flood plain or other natural conditions, whereby considerable damage to buildings or structures and possible loss of life may occur due to the processes of nature". In *Wappingers Falls,* in contrast, it does not appear that the land in the challenged district was in any way unusual in topography or location so as to justify the subjection of all use proposals to case by case decision. The ordinance there sought to avoid the requirement of comprehensive planning by permitting the board to engage in an *ad hoc* approach to development within an area that was ultimately contemplated for use for residential purposes. The ordinance at issue here reflects precisely the opposite objective. The Land Conservation District is not merely a zone in which development is suspended or curtailed pending the formation of a plan for development. Rather, the designation is a product of assessment of the character of the land in light

of the public health and safety interests in being protected against flooding and other hazards that would result from building in an area unsuitable for intensive development. Thus the critical difference between *Wappingers Falls* and the present case is that there the special permit device was used as a substitute for comprehensive land use planning, whereas here the device was chosen in furtherance of comprehensive planning. The "Land Conservation District" provisions are in accord with a well-considered plan and are therefore not *ultra vires.*

Plaintiff next contends that the "Land Conservation District" provisions represent an impermissible delegation of legislative authority to the board of appeals because the ordinance does not provide adequate standards to guide the board in the granting of special permits. The principle is well settled that the delegation of power from a legislative body to an administrative body is impermissible unless accompanied by adequate standards to guide the administrative body's exercise of discretion *(Matter of Levine v Whalen,* 39 NY2d 510, 515; *City of Amsterdam v Helsby,* 37 NY2d 19, 27; *Matter of City of Utica v Water Pollution Control Bd.,* 5 NY2d 164, 168-169). In the area of zoning, variances and use permits, the courts have upheld ordinances delegating power to zoning boards under very broad standards (see, e.g., *Matter of Westchester Reform Temple v Griffin,* 52 Misc 2d 726, affd 29 AD2d 672, affd 22 NY2d 488; *Matter of Aloe v Dassler,* 278 App Div 975, affd 303 NY 878; *Matter of Mirschel v Weissenberger,* 277 App Div 1039; *Matter of Hiscox v Levine,* 31 Misc 2d 151, 153). In *Matter of Aloe v Dassler (supra),* an ordinance was upheld which authorized the board of appeals to permit use of premises as a gasoline filling station "after public notice and hearing, and after taking into consideration the public health, safety and general welfare and subject to appropriate conditions and safeguards", provided that the board's determination be in conformity with the "general purpose and intent" of the zoning regulations. On the other hand, improper delegation has been found when the legislative body has failed to provide intelligible standards, so that the zoning board's discretion was without any practical limitation (e.g., *Marshall v Village of Wappingers Falls,* 28 AD2d 542, *supra; Matter of Little v Young,* 82 NYS2d 909, 914, affd 274 App Div 1005, mot for lv to reargue den 274 App Div 1065, affd 299 NY 699; see, generally, 3 Anderson, American Law of Zoning [2d ed], § 19.09, pp 376-379). In the present ordinance, standards to

guide the board in the issuance of special permits are found in sections 6.600 and 9.500. The enumerated criteria include, *inter alia,* the following: that the proposed use be one of the permitted special uses set forth in the ordinance; that it be "so designed, located and proposed to be operated that the public health, safety, welfare, and convenience will be protected"; that the use not substantially injure the value of neighboring property; that it be compatible with adjoining development and the proposed character of the district; and that it conform to "all applicable regulations governing the district where located". It will be seen that these standards are considerably more detailed and specific than those upheld in *Matter of Aloe v Dassler (supra).* Appellant urges, however, that when an ordinance permits no use as of right, the standards must be more precise than usually required. But because it is the fact of delegation, and not the character of the regulations imposed, which calls into operation the requirement of adequate standards (see *Matter of Levine v Whalen,* 39 NY2d 510, 515-516, *supra; Matter of Thomas v Board of Stds. & Appeals,* 263 App Div 352, 359), we think it insignificant that the ordinance permits no use as of right. In our view, the standards are sufficient to withstand an attack on improper delegation grounds.

Plaintiff further argues that the "Land Conservation District" provisions of the ordinance on their face violate due process because they so restrict the use of property within the district as to render it practically valueless. It is fundamental that the authority to regulate land use through zoning derives from the police power under the due process clauses of the State and Federal Constitutions, and that restrictions upon the use of land are not unlimited but must "bear a substantial relation to the public health, safety, morals, or general welfare" *(Matter of Westchester Reform Temple v Brown,* 22 NY2d 488, 493; 1 Anderson, American Law of Zoning [2d ed], § 7.03). Hence, a zoning ordinance will be declared void as violative of due process "if it encroaches on the exercise of private property rights without substantial relation to a legitimate governmental purpose", or "if it is arbitrary, that is, if there is no reasonable relation between the end sought to be achieved by the regulation and the means used to achieve that end", or "if it renders the property unsuitable for any reasonable income productive or other private use for which it is adapted and thus destroys its economic value, or all but a bare

residue of its value" *(French Investing Co. v City of New York,* 39 NY2d 587, 596). Equally settled, however, is the rule that a zoning ordinance is entitled to a strong presumption of validity *(Golden v Planning Bd. of Ramapo,* 30 NY2d 359, 377, app dsmd 409 US 1003). The ordinance is presumed to be supported by facts known to the Legislature, and the party attacking the ordinance bears the burden of demonstrating its unconstitutionality *(Wiggins v Town of Somers,* 4 NY2d 215, 218, mot to amend remittitur granted 4 NY2d 1045, mot for rearg den 4 NY2d 1046; see, 1 Anderson, American Law of Zoning [2d ed], §§ 3.14, 3.16). As we have already noted, the "Land Conservation District" provisions here at issue aimed to regulate the use of plaintiff's parcel in light of its location in a flood-prone area. In upholding a flood-plan zoning ordinance in *Turnpike Realty Co. v Town of Dedham* (362 Mass 221, 228, cert den 409 US 1108), the court identified the following "basic public policy objectives of restricting use of flood plains": "(1) the protection of individuals who might choose, despite the flood dangers, to develop or occupy land on a flood plain; (2) the protection of other landowners from damages resulting from the development of a flood plain and the consequent obstruction of the flood flow; (3) the protection of the entire community from individual choices of land use which require subsequent public expenditures for public works and disaster relief". It is beyond question that these objectives, which correspond closely to the stated purposes of the present ordinance, may be the subject of a legitimate exercise of the police power (see, generally, Dunham, Flood Control Via the Police Power, 107 U Pa L Rev 1098; Plater, The Takings Issue in a Natural Setting: Floodlines and the Police Power, 52 Texas L Rev 201; 2 Anderson, American Law of Zoning [2d ed], § 9.45; 1 Rathkopf, Law of Zoning and Planning [4th ed], § 7.02 [2]) and they are also well within the scope of the enabling statute, which expressly mentions safety from floods among the authorized objectives of land use regulations (General City Law, § 20, subd 24). Thus we find that the "Land Conservation District" provisions do bear a substantial relation to legitimate governmental purpose and a reasonable relation to the goal of flood safety. Nor, on this record, is it shown that the five authorized uses are so restrictive as to destroy the economic utility of the subject parcel. Accordingly, Special Term correctly held the challenged ordinance constitutional on its face and not *ultra vires.*

Plaintiff lastly argues that Special Term erred in failing to order a trial of the questions of fact raised by his attack on the constitutionality of the ordinance as applied to his particular parcel. However, it appears from plaintiff's statement in lieu of a stenographic transcript (see CPLR 5525, subd [d]), and also from his statement pursuant to CPLR 5531, that the matter was submitted to Special Term upon stipulated facts for decision only on that part of the complaint which alleged that the ordinance was illegal and unconstitutional "on its face". Thus the question of its constitutionality as applied to plaintiff's parcel was not before Special Term, and the judgment of dismissal did not affect the portion of the complaint which raised that issue. We note, however, that if the parties had sought a determination on that portion of the complaint, dismissal would have been proper, although not on the merits. Where a property owner claims that use restrictions are unconstitutional as applied to his particular parcel, rather than on their face, generally he must exhaust his administrative remedies before he may attack the restrictions in a declaratory judgment action (*Janas v Town Bd. of Town of Fleming,* 51 AD2d 473, 477; see *Old Farm Rd. v Town of New Castle,* 26 NY2d 462). Thus, where the ordinance under attack does not prohibit the use proposed but merely requires a special permit, a declaratory judgment action challenging the constitutionality of the regulation will not be entertained until the landowner has made application for the permit (*Polak v Kavanah,* 48 AD2d 840). As plaintiff concedes, it is necessary not only to obtain a permit from the zoning board of appeals, but also to obtain a permit from the State Department of Environmental Conservation in order to fill the subject parcel (ECL 15-0505), and it was apparently on the strength of the department's informal refusal to issue a permit that the board of appeals denied plaintiff's permit application. Yet it appears that plaintiff has never made the formal application contemplated by the Department of Environmental Conservation's regulations (see 6 NYCRR Part 608). The informal inquiry that was made was not an adequate substitute for a formal application. Since there has been no proper and final administrative determination that plaintiff's property cannot be filled, the complaint is premature insofar as it attacks the ordinance as applied, on the ground that the denial of the right to fill the property is a violation of due process (cf. *State of New York v Reed,* 78 Misc 2d 1004, 1006).

Accordingly, the judgment should be affirmed.

MARSH, P. J., SIMONS, DILLON and WITMER, JJ., concur.

Judgment unanimously affirmed, without costs.