Town of Islip, Appellant, v Carl Zalak et al., Respondents.

Second Department, February 11, 1991

APPEARANCES OF COUNSEL

*Robert J. Cimino, Town Attorney (Kevin T. Oliver* and *Richard Hoffmann* of counsel), for appellant.

*Shlimbaum & Shlimbaum (Lark J. Shlimbaum* of counsel), for respondents.

## OPINION OF THE COURT

BRACKEN, J. P.

In invalidating certain local laws contained in Islip Town Code chapter 21, the Supreme Court held that the local laws in question were inconsistent with a State law of general applicability, and that the Town of Islip had failed to comply with the formalities which are required whenever a local government purports to enact a law which is inconsistent with a State law (*see,* Municipal Home Rule Law § 22). Because we find no inconsistency between the State law and the local laws which are at issue in this case, we reverse the order and judgment under review.

I

Islip Town Code chapter 21 is entitled "Solid Waste". This local law contains numerous provisions which regulate the collection and disposal of solid waste within the Town of Islip. One such provision is that "[n]o person shall operate a transfer station/recycling center without a permit therefor as hereinafter provided" (Islip Town Code § 21-5 [B]).

The process by which a "transfer station/recycling center" permit may be obtained is set forth in Islip Town Code § 21-6. Pursuant to § 21-6 (B) (9), applications for such permits must be reviewed and approved by the "Planning Division of the Town of Islip". Islip Town Code § 21-6 (B) (9) (a) provides for the submission of "site plan[s]" to the Planning Division, and defines what information such site plans should contain.

Such site plans are to be approved or disapproved with reference to several express criteria. Among these is the requirement that the site for the proposed transfer station/recycling center consist of at least two acres (Islip Town Code § 21-6 [B] [9] [b]). However, the Code also provides that an applicant may obtain "variances from the requirements governing minimum lot area" (Islip Town Code § 21-6 [B] [9] [o]). Applications for such "variances" are to be made to the "Planning Board", rather than to the "Planning Division".

The plaintiff Town of Islip brought the instant action based on allegations that the defendants were operating an illegal transfer station/recycling center. The complaint alleges, *inter alia,* that the defendants were operating their facility without the permit required pursuant to Islip Town Code § 21-5 (B). The complaint also states that the defendants were in violation of Islip Town Code § 68-338, which governs the uses of land permitted within an "Industrial 1 District". Islip Town Code § 68-338 (D) specifies that a "Transfer station/recycling center" is a permitted use within such districts, subject, however, to the terms of Islip Town Code chapter 21.

The defendants interposed an answer, which included a counterclaim in which they sought a declaration that "Plaintiff's transfer station/recycling center permit procedures and zoning regulations are * * * invalid". According to the allegations contained in the defendants' first counterclaim, the plaintiff's permit procedures are "invalid" because "they purport to delegate jurisdiction over final zoning variances to the Planning Division, which is contrary to law."

Thereafter, the defendants moved for summary judgment in their favor, declaring Islip Town Code § 21-6 (B) (9) (o) and § 68-338 (D) "illegal * * * on the ground that their provisions are contrary to law". After the plaintiff submitted opposition papers, the defendants, in a reply affidavit by the defendant Carl Zalak, averred for the first time that "Islip Town Code § 21-6 (B) (9) (a) is also invalid". The defendants' argument was, in essence, that the provisions of the Islip Town Code cited above which delegate to either the "Planning Division" (Islip Town Code § 68-338 [D]; § 21-6 [B] [9] [a]) or to the "Planning Board" (Islip Town Code § 21-6 [B] [9] [o]) the power to grant "variances" was in contravention of Town Law § 267 (5), which vests that power in a zoning board of appeals.

In the order and judgment appealed from, the court granted the defendants' motion for summary judgment on their first counterclaim, declared Islip Town Code § 21-6 (B) (9) (a); § 21-6 (B) (9) (o) and § 68-338 (D) "invalid and unenforceable", and dismissed the plaintiff's complaint "insofar as it is premised upon the subject sections", on the ground that those provisions were inconsistent with State law of general applicability, because they delegated either to the "Planning Division" or to the "Planning Board" powers which are reserved under State law exclusively to a zoning board of appeals. We disagree with this rationale, and, therefore, reverse.

## II

The Town of Islip unquestionably has the power to regulate the operation of any "transfer station/recycling center" located within its jurisdiction. These centers are defined as facilities "used for the off-loading of solid waste from collection vehicles, the recovery of recyclables from said solid waste and the reloading of nonrecyclable solid waste into vehicles for disposal" (Islip Town Code § 21-2). In more explicit terminology, these facilities are places where garbage is brought, dumped, and sorted, and where the garbage which can somehow be processed for future use is culled from the garbage which is disposable. This disposable garbage may include "sludge, rubbish, ashes, incinerator residue, street cleanings, dead animals, offal, abandoned vehicles, agricultural waste, industrial waste, commercial waste and construction and demolition debris" (Islip Town Code § 21-2).

The State Constitution allows local governments to adopt laws relating to the "safety, health and well-being of persons or property therein" (NY Const, art IX, § 2 [c] [ii] [10]), provided that such local laws are "not inconsistent with the provisions of this constitution or any general law" (NY Const, art IX, § 2 [c] [ii]; *see generally, Jancyn Mfg. Corp. v County of Suffolk,* 71 NY2d 91, 96-97). In addition, the general law of New York State expressly provides that a town board may "provide by ordinance for the licensing and otherwise regulating of * * * [t]he collection of garbage" (Town Law § 136 [8]). Also, Town Law § 130 (6) provides that a town board may enact laws "[p]rohibiting and/or regulating the use of any lands within the town as a dump or dumping ground." Furthermore, the provisions of the New York State Environmental Conservation Law which govern, among other things, "solid waste management facilities" (including transfer stations) *(see,* ECL 27-0701 [2]) include an express authorization permitting local governments to enact consistent local laws *(see,* ECL 27-0711).

It is therefore beyond any reasonable dispute that the Town of Islip may regulate the "transfer station/recycling center" at issue in this case. This court, in full accordance with the statutes outlined above, has held that a local government may even go so far as to ban such facilities from its territorial limits altogether *(see, Town of LaGrange v Giovenetti Enters.,* 123 AD2d 688). This determination is consistent with a line of cases which holds that, in the exercise of its police powers, a

town may completely prohibit the dumping of garbage which originated outside its borders *(see, e.g., Monroe-Livingston Sanitary Landfill v Town of Caledonia,* 51 NY2d 679; *Wiggins v Town of Somers,* 4 NY2d 215; *Town of Plattekill v Dutchess Sanitation,* 43 NY2d 662, *affg* 56 AD2d 150). "In today's society, it can hardly be doubted that municipalities may regulate the disposal of refuse materials" *(Moran v Village of Philmont,* 147 AD2d 230, 234).

The Supreme Court invalidated certain sections of the Islip Town Code on the basis that these sections were inconsistent with either one of two provisions of general State law, i.e., Town Law §§ 261 or 267. Town Law § 261 simply authorizes town boards to regulate "the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures and land". This statute further provides that a town board "may provide that a board of appeals may determine and vary [the] application [of such laws]." Town Law § 267 provides for the composition of zoning boards of appeals, and establishes the procedures pursuant to which such boards should function.

The Supreme Court held that because Islip has established a Zoning Board of Appeals pursuant to Town Law § 267, that agency is the only one authorized by State law to review requests for "variances" from local zoning provisions governing, for example, "the size of yards" (Town Law § 261). The court reasoned that the two-acre minimum lot size requirement contained in Islip Town Code § 21-6 (B) (9) (b) relating to "transfer station/recycling centers", was such a law, and that the Zoning Board of Appeals of the Town of Islip had exclusive jurisdiction to decide whether to permit a variance from its application. The court therefore concluded that Islip Town Code § 21-6 (B) (9) (o), which confers the authority to issue such variances on the Planning Board of the Town of Islip, as well as Islip Town Code § 21-6 (B) (9) (a) and § 68-338 (D) were invalid.

We must emphasize that, even if these provisions were invalid as a result of their alleged inconsistency with provisions of the Town Law, it would in no way follow that the permit requirement itself (Islip Town Code § 21-5) or the two-acre minimum lot size requirement (Islip Town Code § 21-6 [B] [9] [b]) are similarly invalid. The only inconsistency that might be said to exist between local law and State law in this case

relates not to those substantive provisions of the local law, but rather to the procedural provisions which govern whether the Zoning Board of Appeals as opposed to the Planning Board may grant relief from their rigorous application. The central issue before us is, therefore, relatively narrow.

■ Returning to this central issue, we agree with the town's argument that Islip Town Code chapter 21 was not enacted pursuant to Town Law § 261, and that it is not, therefore, what is commonly referred to as a "zoning" law. True, it contains provisions which require, for example, a certain minimum lot size. However, this alone does not transform the local law under review into one governed by Town Law article 16 (Town Law § 261 *et seq.*), where it is clear from a reading of the local law as a whole that it is intended to regulate a particular occupation, rather than to regulate the general uses of land. There are enabling statutes which specifically authorize town boards to regulate the collection and dumping of garbage *(see,* Town Law § 130 [6]; § 136 [8]), and to establish agencies for the enforcement of such laws (Town Law § 130). Therefore, Islip need not rely on the general zoning provisions of Town Law article 16 as the source of its power either to enact laws governing transfer stations or to create administrative agencies responsible for the enforcement of such laws. Since Islip need not regard Town Law article 16 as the source of its power to regulate the defendants' property, it is not bound by the procedural aspects of that article.

This principle is well illustrated in the case of *Niagara Recycling v Town of Niagara* (83 AD2d 316, 318), which dealt with a local law under which a town board was given authority "to grant or deny permits for facilities within the town for waste disposal and management operations". Applicants for such permits were required to submit, among other things, boundary surveys and maps (similar to the "site plan[s]" required by Islip Town Code § 21-6 [B] [9] [a]), and were also required to prove to the satisfaction of the Town Board and the Town Planning Board that the proposed facility would not have "an adverse impact upon * * * local land use and planning" *(Niagara Recycling v Town of Niagara, supra,* at 318).

In the *Niagara* case, both parties apparently treated the issue as one involving "zoning". This is not surprising, since the local law under review did implicate what are generally viewed as "zoning" concerns. However, Justice (now Judge) Hancock, writing for the court, noted that the characteriza-

tion of the local law under review as a "zoning" law was incorrect, and in so doing articulated a definition of the term "zoning" law which is equally applicable to the present case. Judge Hancock stated, "[t]he local law is not a zoning ordinance; it does not involve a comprehensive or master plan for dividing the community into zones where specified uses are permitted but rather is directed at one particular activity no matter where in the town it is carried out" *(Niagara Recycling v Town of Niagara, supra,* at 324, n 2).

The distinction between local laws which are purely "zoning" laws, so as to be controlled by Town Law article 16, on the one hand, and local laws which, while affecting the use of land, are not strictly speaking "zoning" laws, on the other, was recognized anew in the case of *Matter of Hill v Town of Elbridge Zoning Bd. of Appeals* (112 AD2d 45). In this case, the Supreme Court had invalidated a town's "Mobile Home Law" on the basis that it had been enacted in a manner which did not conform to Town Law article 16. In reversing, the Appellate Division held that the law, which restricted the location of mobile home parks to certain districts, was a valid enactment pursuant to Town Law § 130 (21).

■ Decisional authority from other jurisdictions supports the view that compliance with statutory zoning procedures is needed only when the local law in question represents an exercise of the local government's general "zoning" powers, rather than an exercise of a more specific "police" power. For example, in *American Sign & Indicator Corp. v Town of Framingham* (9 Mass App 66, 399 NE2d 41), the court held that a local government could regulate signs by the enactment of a local law in a manner which did not comply with that State's Zoning Enabling Act. The plaintiff in that case made an argument similar to that made by the defendant in the present case, i.e., that the regulation of outdoor signs was covered by the Zoning Enabling Act, and that the delegation of the power to issue sign permits to a "sign review board" was inconsistent with that provision of the Zoning Enabling Act which delegated variance powers to the town's Zoning Boards of Appeals. The court rejected this argument, holding that the law regulating signs was not a "zoning" law, and stating that "not all ordinances or by-laws which regulate land use are zoning laws and * * * only the latter need conform with the Zoning Enabling Act" *(American Sign & Indicator Corp. v Town of Framingham, supra,* 399 NE2d, at 43, citing *Lovequist v Conservation Commn.,* 379 Mass 7, 393

NE2d 858; *see also, Summey Outdoor Adv. v County of Henderson,* 96 NC App 533, 386 SE2d 439).

In *Township of Howell v Sagorodny* (46 NJ Super 182, 134 A2d 452, *affd* 25 NJ 502, 138 A2d 13), the court applied an ordinance which regulated junkyards, and which required, among other things, that the junkyard premises be at least 500 feet from any dwelling. The court rejected a challenge to the ordinance based on the assertion that it had been enacted without compliance with New Jersey's State-wide zoning law. Noting that the local regulation of junkyards had been authorized by an entirely separate statute, the court held that compliance with zoning law procedures was not necessary *(cf., Ellison v City of Fort Lauderdale,* 183 So 2d 193 [Fla]; *see also,* 1 Rathkopf, Zoning and Planning § 1.01 [2]).

In accordance with the rule reflected in these cases, we conclude that Islip Town Code chapter 21 is not a zoning law merely because it touches the use of land. The chapter applies to a particular activity (the operation of "transfer station/ recycling centers"), and it applies to that activity wherever it is carried out in the town. It does not suspend or limit in any way the application of Islip's zoning laws, nor does it curtail in any way the powers of the town's Zoning Board of Appeals. Town Code § 21-6 (B) (10), in fact, explicitly states that "[n]othing in this section shall exempt an applicant or facility from compliance with zoning * * * requirements of the Islip Town Code". More precisely, Islip Town Code chapter 21 should be regarded as having been enacted pursuant to the town's specific power to regulate garbage collection (Town Law § 136 [8]; § 130 [6]; *see also, Matter of All Weather Carting Corp. v Town Bd.,* 137 Misc 2d 843 [Doyle, J.]), rather than pursuant to the town's much broader power to regulate the use of land in general (Town Law § 261; *see, New York State Dept. of Envtl. Conservation v Sabrina Corp.,* Sup Ct, Suffolk County, Apr. 25, 1985, Stark, J.).

For these reasons, Islip Town Code § 21-6 (B) (9) (o) is not inconsistent with any part of Town Law article 16, or with any other provision of the general law of New York. The delegation to the Planning Board of the power to vary the standards set forth in Islip Town Code chapter 21 *(see,* Islip Town Code § 21-6 [B] [9] [o]) is not inconsistent with the delegation to the Zoning Board of Appeals of the power to vary the standards set forth in that portion of the Islip Town Code which expressly deals with zoning *(see,* Town Law § 267) because Town Code chapter 21 is not a zoning law. Islip Town

Code § 21-6 (B) (9) (a), which was also invalidated by the Supreme Court insofar as it confers upon the "Planning Division" the power to issue permits for the operation of transfer station/recycling centers, is, for the same reasons, not inconsistent with State law.

The Supreme Court also invalidated Islip Town Code § 68-338 (D) which *may* properly be treated as a "zoning" provision: it provides that a "transfer station/recycling center" is a permitted use within an Industrial 1 District, subject to the provisions of Islip Town Code chapter 21. However, in light of our determination with respect to Islip Town Code chapter 21, the determination of the Supreme Court with respect to section 68-338 (D) likewise must fall.

Because the Town of Islip did not attempt to supersede State law by enacting an inconsistent local law *(see, Kamhi v Town of Yorktown,* 74 NY2d 423, 429-430; *Rozler v Franger,* 46 NY2d 760, *affg* 61 AD2d 46, on opn of Hancock, J.; *Kasper v Town of Brookhaven,* 142 AD2d 213, 216-217; *Matter of Torsoe Bros. Constr. Corp. v Architecture & Community Appearance Bd. of Review,* 120 AD2d 738, 739; *Matter of Sherman v Frazier,* 84 AD2d 401), we conclude that compliance with Municipal Home Rule Law § 22 was not required *(cf., Kamhi v Town of Yorktown, supra,* at 434-435; *Turnpike Woods v Town of Stony Point,* 70 NY2d 735, 737-738). There being no other basis upon which to invalidate the sections of the Islip Town Code now under review, the order and judgment appealed from should be reversed.

### III

On appeal, the defendants assert alternative grounds for affirmance of the order and judgment under review. They contend that "Islip Town Code § 21-6 (B) (9) and § 68-338 (D) amount to an unconstitutional summary termination of an existing nonconforming use because [the Town] has not provided a reasonable amortization period". The defendants rely on the doctrine that "[a] zoning ordinance in order to be validly applied cannot * * * serve to prohibit use to which the property is devoted at the time of the enactment of the ordinance" *(Lutheran Church v City of New York,* 35 NY2d 121, 129, citing 1 Anderson, New York Zoning Law and Practice § 6.01 [2d ed]), a doctrine whose applicability is limited by the rule that the State, or its subdivisions, may properly prohibit such legal nonconforming uses, provided

that the landowner is given a reasonable period of time within which to recover his or her investment (see, *Matter of Harbison v City of Buffalo*, 4 NY2d 553; *see also, Matter of Town of Islip v Caviglia*, 73 NY2d 544, 560-561; *Matter of Suffolk Outdoor Adv. Co. v Town of Southampton*, 60 NY2d 70; *Modjeska Sign Studios v Berle*, 43 NY2d 468; 1 Anderson, New York Zoning Law and Practice § 6.51 [3d ed]; Annotation, Nonconforming Uses—Amortization, 22 ALR3d 1134). The defendants argue that their use of the property in question as a "transfer station" preceded the enactment of Islip Town Code chapter 21, which now prohibits such a use because the size of their property is less than the two-acre minimum.

Acceptance of the defendants' alternative argument with respect to their alleged right to continue a nonconforming use would not warrant the relief actually granted by the Supreme Court, to wit, a declaration that Islip Town Code chapter 21 is invalid, which was the only relief expressly requested by the defendants in their motion papers, and which is the only relief expressly requested by the defendants on appeal. Since acceptance of this alternative argument would warrant relief altogether different from that which was explicitly requested in the defendants' notice of motion, and altogether different from that which was granted by the Supreme Court, it is not an argument which may serve as an alternative ground for affirmance of the order and judgment appealed from (cf., *Town of Massena v Niagara Mohawk Power Corp.*, 45 NY2d 482; *Erie R. R. Co. v International Ry. Co.*, 209 App Div 380, *affd* 239 NY 598; *Menorah Nursing Home v Zukov*, 153 AD2d 13, 19; 10 Carmody-Wait 2d, NY Prac § 70:423, at 455). Acceptance of this argument would, in other words, require the granting of affirmative relief to the defendants, who are nonappealing parties. Assuming, without deciding, that under the present circumstances this court may have the power to grant such affirmative relief (see, CPLR 3212 [b]; *Merritt Hill Vineyards v Windy Hgts. Vineyard*, 61 NY2d 106, 110-112; *De Rosa v Slattery Contr. Co.*, 14 AD2d 278, 280-281, *affd* 12 NY2d 735), we conclude that such relief is not now warranted. Review of the defendants' alternative argument is barred because (1) this argument is not ripe for judicial review, and (2) the defendants have failed to exhaust their administrative remedies.

On appeal, the defendants inform us that their application for a permit to operate a transfer station is still pending. We infer that the town's delay in processing this application,

which was filed on September 16, 1988, is attributable to the fact that, at least since December 1988 (when the defendants made their motion for summary judgment), the powers of the town's Planning Division and its Planning Board, with respect to the processing of this application, have been in doubt. Since we have now determined that those agencies may properly exercise the powers delegated to them under local law, including the power to grant variances, there should be no impediment to the expeditious consideration of the defendants' application.

Under these circumstances, the defendants' argument that the local laws under review are invalid because they fail to provide for a reasonable amortization period is not ripe for judicial review. In general, a landowner may not seek judicial review of a local government's land use laws until the local agency responsible for the administration of such laws takes a "definitive position 'that inflicts an actual, concrete injury' " *(Church of St. Paul & St. Andrew v Barwick,* 67 NY2d 510, 522, *cert denied* 479 US 985, quoting *Williamson Planning Commn. v Hamilton Bank,* 473 US 172; *see, MacDonald, Sommer & Frates v Yolo County,* 477 US 340; *cf., de St. Aubin v Flacke,* 68 NY2d 66, 74-76; *see also, First Lutheran Church v Los Angeles County,* 482 US 304; *Hodel v Virginia Surface Min. & Reclamation Assn.,* 452 US 264). So long as a reasonable possibility remains open that the local regulatory agency may waive or vary the application of the laws by which a party claims to be aggrieved, the question of whether such laws may legally be applied to the claimant remains hypothetical and abstract.

In accordance with this general rule, it has been held that a claim that a local government's land use laws are unconstitutional as applied, in that they constitute an illegal "taking" of property without just compensation, is not ripe for judicial review until administrative relief has been sought and denied *(see, Matter of Parkview Assocs. v City of New York,* 71 NY2d 274, 283; citing *Church of St. Paul & St. Andrew v Barwick, supra; Scarsdale Supply Co. v Village of Scarsdale,* 8 NY2d 325, 330; *Levitt v Incorporated Vil. of Sands Point,* 6 NY2d 269, 273; *Hawes v State of New York,* 161 AD2d 745; *see also, MacDonald, Sommer & Frates v Yolo County, supra; Agins v Tiburon,* 447 US 255). Since the granting of administrative relief in such cases would render the complaining landowner's arguments largely, or even completely moot, judicial intervention should be reserved until after the variance application

has been denied. The harm which the defendants anticipate, i.e., the loss of the value of their land, may never occur since the administrative agencies with the authority to do so may still grant them a permit to operate a transfer station, after having granted the necessary variance. Actual harm will occur only if the defendants' currently pending application for a permit is denied. In accordance with the foregoing cases, we conclude that there is no justiciable controversy at this point *(see also, Matter of Jamaica Water Supply Co. v Public Serv. Commn.,* 152 AD2d 17, 19-20; *Town of Islip v Cuomo,* 147 AD2d 56, 65-67; *Bachety v Kinsella,* 146 AD2d 725).

■ The defendants' claim that portions of Islip Town Code chapter 21 may not constitutionally be applied to them is premature for the additional reason that their administrative remedies have not been exhausted. Although the doctrine which precludes judicial review of controversies until after available administrative remedies have been exhausted is distinct from the doctrine which precludes judicial review of controversies not yet "ripe" *(see, Church of St. Paul & St. Andrew v Barwick, supra,* at 521; *Petosa v City of New York,* 135 AD2d 800, 802), the two doctrines serve similar purposes and, in the context of the present case, their contours are virtually indistinguishable. As noted above, the basic relief which would be warranted in the event that the defendants were to show the existence of a legal nonconforming use would be the nullification of the two-acre minimum lot size requirement *as applied* to them. The failure to exhaust administrative remedies may pose a bar to contending that a legislative enactment is unconstitutional *as applied (see, e.g., Loretto v Teleprompter Manhattan CATV Corp.,* 53 NY2d 124, 138-139, *revd on other grounds* 458 US 419; *Old Farm Rd. v Town of New Castle,* 26 NY2d 462, 465; *Radano v Town of Huntington,* 305 NY 911; *Dur-Bar Realty Co. v City of Utica,* 57 AD2d 51, 58, *affd* 44 NY2d 1002; *Suffolk Outdoor Adv. Co. v Hulse,* 56 AD2d 365, 377, *mod on other grounds* 43 NY2d 483; *Penfield v Murray Hill Holding Corp.,* 281 App Div 675, *affd* 306 NY 602; 2 Anderson, New York Zoning Law and Practice, § 28.12, at 445 [3d ed]).

These cases are to be distinguished from those in which the plaintiff challenged legislation on the grounds of facial invalidity, for which exhaustion of administrative remedies may not necessarily be required *(see, e.g., Loretto v Teleprompter Manhattan CATV Corp., supra; McGowan v Cohalan,* 41 NY2d 434; *Kraushaar & Son v City of New York,* 1 NY2d 774; 2

Anderson, New York Zoning Law and Practice § 28.12, at 446 [3d ed]). If, as they argue (but have not necessarily established), the defendants are the owners of land improved by a legal nonconforming use, then the most to which they would be entitled would be a declaration that certain provisions of Islip Town Code chapter 21 are invalid *as applied;* it would not follow that such provisions are completely invalid as being outside the scope of the town's constitutional or statutory powers. Therefore, the doctrine of exhaustion of administrative remedies (as well as the twin doctrine of ripeness) applies.

For the foregoing reasons, the defendants' alternative argument concerning their right to continue a nonconforming use is not reviewable on this appeal.

## IV

We must address a third argument made by the defendants, i.e., that the plaintiff failed to define the criteria by which the Planning Board is to be guided when deciding whether to grant a variance application pursuant to the power delegated to it by Islip Town Code § 21-6 (B) (9) (o). The defendants argue that given the absence of such criteria, the delegation to the Planning Board of the power to grant variance applications constitutes an invalid delegation of legislative power.

If accepted, this argument would serve as an alternative basis for the affirmance of at least part of the order and judgment under review, i.e., so much of it as invalidated Islip Town Code § 21-6 (B) (9) (o), which delegates to the Planning Board the power to issue variances. Further, since the acceptance of this argument would result in a declaration of the *facial* invalidity of that provision of the Town Code, the failure of the defendants to have exhausted their administrative remedies would present no barrier to judicial review. It would be anomalous to suggest that the defendants must seek a variance from this agency when it is their legal contention that this agency has no legal authority to grant a variance at all. A legal challenge to a local government's delegation of its land use regulatory powers to an administrative agency may properly be reviewed before the complaining party has sought relief from the agency *(see, e.g., Dur-Bar Realty Co. v City of Utica,* 57 AD2d 51, *affd* 44 NY2d 1002, *supra).*

The defendants' argument in this respect is, therefore, reviewable. One might question whether it is wise for the defendants to make such an argument, since its acceptance

would result in the nullification of the one local law which allows them to seek administrative relief from rigorous application of the terms of Islip Town Code chapter 21. Our precedents indicate that the consequence which follows from a declaration that a local government has improperly delegated the power to vary land use laws is that the issuance of such a variance by that agency is rendered impossible *(see, Matter of Ehret v Bates,* 18 AD2d 938, 939; *see also, Matter of Carlstein v Zoning Bd. of Appeals,* 71 AD2d 768, 769; *cf., Matter of Shepard v Zoning Bd. of Appeals,* 92 AD2d 993). The defendants apparently are of a mind that if we were to find that the power to issue variances had been improperly delegated to the Planning Board by the law in question, then it would follow that the power would devolve on the Zoning Board of Appeals. However, in the absence of an express provision in the Town Code granting to that agency the power to vary the provisions of chapter 21, it is far from clear that the variance power could legally be exercised by the Zoning Board of Appeals. This issue, however, we need not now decide.

We conclude that the defendants' argument concerning the plaintiff's alleged failure to specify the criteria to be applied by the Planning Board in reviewing variance requests is without merit. The courts have repeatedly held that local governments may properly delegate the discretionary power to vary the application of zoning laws, provided that there are standards "stated in general terms, 'are capable of reasonable application' " *(Matter of Torsoe Bros. Constr. Corp. v Architecture & Community Appearance Bd. of Review,* 120 AD2d 738, 739, *supra,* quoting *Matter of Aloe v Dassler,* 278 App Div 975, *affd* 303 NY 878; *see also, Matter of Kohnberg v Murdock,* 6 NY2d 937, *affg* 6 AD2d 876; *Dur-Bar Realty Co. v City of Utica,* 57 AD2d 51, 55-56, *affd* 44 NY2d 1002, *supra; see also,* 2 Anderson, New York Zoning Law and Practice § 23.07, at 167-168 [3d ed]). We believe that the local law under review in the present case contains an adequate statement in "general terms" of the appropriate standards.

Town Code § 21-6 (B) (9) (b), which establishes the two-acre minimum lot size, states that this requirement "will be based on the scale of operation as measured by the size of the buildings proposed for the site, the volume of solid waste handled on a daily basis and the requirements for vehicle parking and movement or a finding that the operation cannot be adequately screened from adjoining property". These considerations are those which are to govern the Planning Divi-

sion's exercise of its power to require a lot size of *greater* than two acres and, as we read the law as a whole, these considerations are also those which should govern the Planning Board's power to authorize a *lesser* lot size (Islip Town Code § 21-6 [B] [9] [o]).

Although general, these standards are no more general than others which, in the context of similar cases, have been found by the courts to have sufficient specificity. For example, in *Matter of Aloe v Dassler* (278 App Div 975, *affd* 303 NY 878, *supra),* the court upheld a local law which authorized an agency to permit the use of premises as a gas station "after taking into consideration the public health, safety and general welfare, and subject to appropriate conditions and safe-guards". In *Dur-Bar Realty Co. v City of Utica (supra,* 57 AD2d, at 56), the court upheld a local government's delegation of its power to determine the land uses to be permitted within certain "Land Conservation Districts", where the criteria to be applied included whether the proposed use was "so designed, located and proposed to be operated that the public health, safety, welfare, and convenience will be protected". It is readily apparent that the standards outlined in Islip Town Code § 21-6 (B) (9) (o), are no less specific. We, therefore, conclude that the town's delegation of variance power to the Planning Board (Islip Town Code § 26-6 [B] [9] [o]) is not invalid for this reason.

## V

For all of the foregoing reasons, the order and judgment appealed from is reversed, and the defendants' motion for partial summary judgment denied. Because we have passed only on the facial validity of Islip Town Code § 21-6 (B) (9) (a); § 21-6 (B) (9) (o) and § 68-338 (D), and because we have not addressed the issue of their validity as applied to the defendants, it is appropriate to find, at this stage, only that the provisions under review were validly enacted. The defendants are free to reassert their argument that these provisions cannot be validly applied to them at such time as this argument might become ripe for judicial review *(see Town of Islip v Cuomo,* 147 AD2d 56, 69, *supra).*

KUNZEMAN, EIBER and HARWOOD, JJ., concur.

Ordered that the judgment is reversed, on the law, with costs, and the defendant's motion is denied.