NIAGARA RECYCLING, INC., et al., Appellants-Respondents,
v TOWN OF NIAGARA, Respondent-Appellant.

Fourth Department, November 13, 1981

APPEARANCES OF COUNSEL

*Duke, Holzman, Yaeger & Radlin (Emanuel Duke* of counsel), for appellants-respondents.

*Robert P. Merino (Rita Hager* of counsel), for respondent-appellant.

OPINION OF THE COURT

HANCOCK, JR., J.

Plaintiffs appeal from an order denying their motion for a preliminary injunction (CPLR 6301) in a declaratory judgment action in which they attack the constitutionality of Local Law No. 8 adopted by the Niagara Town Board on November 25, 1980 entitled "Solid Waste Management Facility, Incineration, Recycling, and Landfills Law of the Town of Niagara". Defendant town cross-appeals from the denial of its motion for a preliminary injunction to compel compliance with Local Law No. 8 and from the court's dismissal pursuant to CPLR 3211 (subd [a], par 4) of its counterclaim in which it seeks to enjoin plaintiffs permanently from continuing to conduct their operations in alleged violation of various permit conditions and building code and zoning ordinance provisions. In a related CPLR article 78 proceeding commenced by these plaintiffs involving the same local law, we have dismissed their petition seeking to annul the action of the town board in enacting the legislation because of the town's alleged non-compliance with the provisions of the State Environmental

Quality Review Act (SEQRA) (ECL 8-0101 — 8-0117) and the regulations adopted thereunder (6 NYCRR 617.1 — 617.19) in issuing a determination of nonsignificance and in failing to prepare and file an environmental impact statement *(Matter of Niagara Recycling v Town Bd. of Town of Niagara,* 83 AD2d 335).

I.

Local Law No. 8 establishes a complex regulatory mechanism under which the town board is given authority to grant or deny permits for facilities within the town for waste disposal and management operations. The requirements established by the local law are stated to be in addition to the complex system of existing regulations governing the licensing of such facilities under the ECL; all relevant sections of ECL article 27 and of 6 NYCRR Part 360 pertaining to such facilities are expressly made a part of the local law.

Under the enactment, permits are required for the continued operation and for the enlargement or modification of existing facilities as well as for the approval of new facilities. The procedural requirements for permit applications and town board approval essentially duplicate those established for licensing by the Department of Environmental Conservation (DEC) under 6 NYCRR 360.2 and 360.3. Thus, for example, an applicant must provide engineering plans, reports and specifications prepared by a professional engineer, property boundary surveys, a topographical map, a hydrogeological report and a detailed plan for the closure of the facility including a restoration plan satisfying 10 separately enumerated criteria. The application must be accompanied by any data required by SEQRA (e.g., environmental impact statements required for such facilities as proposed actions under ECL 8-0109 and 6 NYCRR Part 617) and each applicant must "demonstrate that the facility will not have an adverse impact upon the environment of the Town of Niagara, town-wide fire protection, town-wide sewer, water and public utilities, local traffic conditions, local land use and planning, and the Town Board and Planning Board shall approve an application only after careful consideration of the above

criteria and requirements" (Local Laws, 1980, No. 8 of Town of Niagara, art VII, subd 3, par I).

Under other sections of Local Law No. 8, public hearings must be conducted on each permit application (art VI, subd 3), a $500 application fee is required (art VII, subd 3, par H) and provisions are made for conditioning the issuance of permits upon the posting of performance bonds, restoration bonds, and penalty bonds and upon the securing of liability insurance in amounts satisfactory to the town (art VIII, subd 1, pars A, B, C, D). The town board is given the discretion to appoint an on-site agent to monitor a permitee's operation (art XIII, subd 1).

The town board (within 60 days following the receipt of a completed application or such longer period as may be agreed upon with the applicant) after conducting the public hearing "shall either approve the application and issue the appropriate permit or disapprove the application." (Local Laws, 1980, No. 8 of Town of Niagara, art VI, subd 1.) With respect to applications for facilities in operation as of the effective date of the local law, a permit shall be issued only if the applicant has "demonstrated that said facility has complied with the standards of operation as set forth in the Environmental Conservation Law and Part 360 NYCRR and this Local Law and all town laws; otherwise, such permit shall be denied and the facility shall thereafter accept no new wastes but shall have ninety (90) days to cease operations and complete restorative measures." (Local Laws, 1980, No. 8 of Town of Niagara, art VI, subd 2, par A.) The town board may approve a permit for a proposed new facility "only if the proposed construction thereof is demonstrated to be in accordance with the terms of a DEC issued construction and operating permit" and if "the submitted engineering data and construction plans have been approved by the Town Engineer, Building Inspector, or the Town's Consulting Engineers and after the Board and applicant have complied with the dictates of the Environmental Quality Review Act of the State of New York. (SEQRA)" (Local Laws, 1980, No. 8 of Town of Niagara, art VI, subd 2, pars B, C.) The public hearing must be held within 60 days of the receipt of a completed application.

The effect of the local law is to create a parallel regulatory and licensing system to be implemented by the town board and to be coextensive with that administered by the DEC under ECL article 27 and by the Environmental Protection Agency under the Federal Resource Conservation and Recovery Act of 1976 (US Code, tit 42, ch 82). Under Local Law No. 8 the town board must, before issuing a permit, make its own independent determination that an applicant has complied not only with town laws but with the many relevant procedural and substantive dictates of ECL article 27 and the regulations adopted thereunder pertaining to approval and licensing by the DEC for waste disposal and management facilities. Thus, the local law permits the town board to deny a permit upon its own finding that the applicant has not sufficiently demonstrated compliance with the standards of ECL article 27 and 6 NYCRR Part 360 even though the DEC, upon the identical information and data, might find sufficient compliance with the statute and its own regulations for the same facility and issue a permit.

Plaintiffs Cecos International, Inc. (Cecos) and Newco Waste Systems, Inc. (Newco) maintain extensive commercial facilities in the Town of Niagara for waste treatment and management operations on land leased from plaintiffs Niagara Recycling, Inc., and W.L.R. Chemical Waste Realty. Cecos operates facilities for the treatment and disposal of chemical wastes including waste water treatment facilities, drying beds, secure chemical management facilities and secure sludge management facilities. Newco uses the leased property as a sanitary landfill and for a scrap metal recycling facility. Pursuant to the procedures detailed in ECL article 27 (tit 7) and 6 NYCRR Part 360, plaintiffs made application to the DEC for a permit for the conduct of their various existing waste treatment and disposal activities. After extensive hearings and based upon the detailed data concerning the construction, operation, maintenance, functioning and future closure of the facilities operated by Newco and Cecos, the DEC granted an operating permit on October 27, 1979 which was amended in certain particulars by a modifying permit on July 31, 1980. In addition, Cecos has obtained a permit

from the Federal Environmental Protection Agency covering certain operations for the treatment and disposal of hazardous wastes. These permits, currently in effect, impose numerous conditions and safeguards on plaintiffs' activities requiring, among other things, the posting of performance bonds in the principal sum of $4,160,510 covering preclosure and postclosure monitoring and maintenance of the various facilities, the establishment of trust funds in the principal sum of $2,296,000 to further assure the secure closure of the facilities and the obtaining of liability insurance covering the operations with a combined policy limit of $21,000,000. It appears that the areas covered by the permits have been used for the disposal of general refuse and industrial and chemical waste since their acquisition from Union Carbide Corporation by Niagara Recycling, Inc., in 1972 and used for several years prior thereto by Union Carbide Corporation as a site for the disposal of its own chemical sludges and industrial wastes as well as wastes of various outside businesses.

The facilities operated by Cecos at the site for treatment and disposal of industrial and hazardous wastes serve most of the major industries in Erie and Niagara Counties as well as numerous smaller industries. Approximately 550,000 tons of hazardous waste material are generated annually by Cecos' industrial customers in Erie and Niagara Counties representing 42% of the hazardous waste produced annually in the entire State of New York. The only other facility fully licensed by State and Federal authorities for secure land disposal of hazardous wastes in the northeastern United States is located in the Town of Porter, Niagara County, and it, plaintiffs maintain, is presently filled to its permitted capacity and unable to accept further hazardous waste material. The next closest sites for hazardous waste disposal are in the States of Ohio, South Carolina and Alabama.

Plaintiff Cecos' application shows that there are three Secure Chemical Management Facilities (SCMF's) for secure land disposal of hazardous wastes on its site. Two of the SCMF's are filled to capacity and have been closed. The third, it is alleged, will be filled to its permitted capacity within 30 days of the date of its application. At the time of

its application to Special Term, Cecos had pending before the DEC applications for permits for the expansion of its unfilled SCMF and for the construction of two additional SCMF's at the site. As of February, 1981, the application procedures for DEC permits for the additional SCMF's required by ECL article 27 (tit 7) and 6 NYCRR Part 360, including the preparation of a draft environmental impact statement, and the other documents required by SEQRA and 6 NYCRR Part 617 had been completed. The required public hearing (filling more than 5,000 pages of transcripts covering the testimony of 22 witnesses and 83 exhibits) was held from August 25, 1980 through October 20, 1980 and essentially completed on that day approximately one month before the enactment of Local Law No. 8. The hearing was reopened for one day on December 3, 1980. Plaintiff Cecos maintains that it "clearly demonstrated at the public hearing that its proposal for the expansion of SCMF #3 and for the construction of SCMF #4 and SCMF #5 meets or exceeds all of the criteria established by the Environmental Conservation Law and 6 NYCRR, Parts 360 and 617". Cecos professes to believe that the permit for the expansion of SCMF No. 3 and the construction and operation of SCMF's Nos. 4 and 5 will be granted by the DEC.

Newco's sanitary landfill and scrap metal recycling facilities (both licensed by the DEC) provide waste disposal services to 12 municipal governments in Erie and Niagara Counties including the Cities of Niagara Falls and North Tonawanda and the Town of Cheektowaga, four school districts, the Buffalo Sewer Authority, the Niagara Frontier Parks Commission and 29 major western New York industries.

In affidavits submitted to Special Term in support of their application and in opposition to defendant's cross motion for an injunction seeking to close their operations, including affidavits from representatives of their various municipal and industrial customers, plaintiffs have set forth evidence demonstrating the adverse impact upon them and upon their customers and the residents of the municipalities served by them which would result from the possible cessation or curtailment of present operations and

from the denial of Cecos' proposed additions to its hazardous waste disposal facilities.[1]

Defendant in its answer to the complaint denies plaintiffs' allegations of irreparable injury. In its affidavits submitted to Special Term it asserts that the local law "does not interfere with existing contract rights" since it "requires only a demonstration of compliance with the federal and state regulations" and that compliance would not be burdensome because plaintiffs could submit copies of the documents submitted to the DEC and could request a variance from onerous requirements as provided in Local Law No. 8 (art IX, subd 1, par D). In its counterclaim the town alleges that plaintiffs in several respects have conducted and continue to conduct their operations in violation of various conditions of town permits, provisions of the town zoning ordinance, the Town of Niagara Building Code and the Town of Niagara Local Law No. 4, 1979.

The evidence submitted by plaintiffs and their municipal and industrial customers bearing on the nature, scope and history of plaintiffs' operations, the availability of comparable waste disposal and management facilities, and on the impact that a disruption of plaintiffs' operations would have is essentially unrefuted.

## II.

Plaintiffs' contentions that Local Law No. 8 should be

---

1. For example, it is stated that if Cecos is not permitted to expand its present facilities for the disposal of hazardous wastes, the alternative measures which its customers would be required to adopt would entail hauling the hazardous waste to sites in Ohio, South Carolina or Alabama or storing or disposing of the substances in unsecure and unlicensed locations; the Director of Utilities for the City of Niagara Falls states that if the city were prohibited from using the Newco sanitary landfill area for the disposal of the large quantities of sludge produced from its sewage treatment plant, the city would face a $10,000 per day fine if it should dispose of the sludge in an unapproved manner and "a severe problem in attempting to find substitute means of handling, hauling and disposing of its solid waste (sludge) and in substantial additional costs if another facility, licensed or unlicensed, is available." The director also points out that "[o]nly one other fully licensed State facility is available in the entire Erie and Niagara County area" and that it is "uncertain whether disposal arrangements could be made with such other licensed facility."

Both plaintiffs Cecos and Newco have submitted affidavits attesting to the substantial additional costs and burdens that would result from the superimposition on the ECL permit requirements of the procedural requirements for town board approval under Local Law No. 8. Plaintiffs have also submitted evidence purporting to show the extent of the economic loss to their businesses in the event their operations were shut down and the consequent loss to the community in terms of jobs and business activity.

invalidated are basically three:[2] (1) that the local law deprives plaintiffs of their property without due process of law in violation of the Fourteenth Amendment of the United States Constitution and section 6 of article I of the New York State Constitution; (2) that the local law is inconsistent with a general law (i.e., ECL art 27, tit 7; 6 NYCRR Part 360) and therefore violates Municipal Home Rule Law (§ 10, subd 1, par [i]) and the New York State Constitution (art IX, § 2, subd [c]); and (3) that the local law, as applied to plaintiffs, imposes an undue burden upon interstate commerce in violation of section 8 of article I of the United States Constitution.

It is well established that to be entitled to a preliminary injunction the moving party must demonstrate: (1) the likelihood of ultimate success on the merits; (2) irreparable injury to him absent granting of the preliminary injunction; and (3) that a balancing of equities favors his position (see *Gambar Enterprises v Kelly Servs.,* 69 AD2d 297, 306; *Town of Porter v Chem-Trol Pollution Servs.,* 60 AD2d 987, 988; *Tucker v Toia,* 54 AD2d 322, 324). We are mindful of the rules that in reviewing an order denying a motion for preliminary injunction, we should not determine finally the merits of the action and "should not interfere with the exercise of discretion by Special Term" but should review only the determination of "whether that discretion has been abused" *(Gambar Enterprises v Kelly Servs., supra,* p 306; see *Western Regional Off-Track Betting Corp. v Town of Henrietta,* 46 AD2d 1010; *R & J Bottling Co. v Rosenthal,* 40 AD2d 911).

In its decision Special Term denied plaintiffs' application for two reasons: (1) plaintiffs did not make a "prima facie showing of the unconstitutionality of Local Law No. 8," and (2) plaintiffs failed to demonstrate the irreparable injury to be expected if the local law is applied to plaintiffs. With respect to plaintiffs' claim of irreparable injury, the court stated:

---

2. Although the parties in their briefs have treated the case as one involving zoning legislation and the continuation of a nonconforming use and have addressed the issue in separate points, we do not so view it. The local law is not a zoning ordinance; it does not involve a comprehensive or master plan for dividing the community into zones where specified uses are permitted but rather is directed at one particular activity no matter where in the town it is carried out. The nonconforming use cases, however, are analogous and have been included in our discussion of the due process issue in point III-A, *infra.*

"Neither have they shown irreparable injury if it is applied to them *because their present operations are not affected by its provisions. The Local Law was intended to have an application only if plaintiffs expand their facilities,* and in that event, any application for a permit must be processed by defendant within 60 days of the filing of such application.

"Moreover, plaintiffs have not applied for a permit under the new Town ordinance so they have not been denied a permit pursuant to its provisions. Local Law No. 8-1980 has not been enforced against plaintiffs in any way to date, *as it does not affect ongoing operations.*" (Emphasis supplied.)

It did not address the third required element: i.e., whether plaintiffs had made a sufficient showing that a balance of the equities would favor their position.

We turn then to the central question before us: whether it can be said under all of the circumstances that Special Term abused its discretion in denying plaintiffs' application for the preliminary injunction.

III.

A.

■ In assessing the likelihood of success of plaintiffs' arguments under the due process clauses of the Federal and State Constitutions, we note at the outset that contrary to defendant's contention (adopted by Special Term in its decision), Local Law No. 8 applies to existing as well as proposed facilities. Both Cecos and Newco have substantial investments in existing waste disposal and management operations on sites leased in the Town of Niagara which have been used for such purposes for several years. Cecos operates systems for the disposal of hazardous industrial wastes including drying beds, systems for waste water treatment and for the secure management of chemical wastes and sludge. Newco maintains a sanitary landfill and an operation for scrap metal recycling. Both the Cecos and the Newco systems have since 1979 been duly licensed by the DEC. Additionally, Cecos has a permit from the Federal Environmental Protection Agency covering cer-

tain of its activities and has completed lengthy application procedures including hearings in connection with its application under ECL article 27 for enlargement of its secure chemical management facilities. As noted, the local law empowers the town board to deny a permit upon its own finding that the applicant has not sufficiently demonstrated compliance with ECL standards even though the DEC upon the identical information and data might have found sufficient compliance with its own regulations and have issued a permit for the same facility. Particularly with respect to these provisions mandating the licensing of existing operations and the consequent power given the town board to compel a cessation of plaintiffs Cecos' and Newco's businesses by denying their permit applications, there is, in our opinion, a substantial likelihood that Local Law No. 8 could be unconstitutional in its effect on them.

The touchstone of due process is whether a law is reasonable in relation to its subject matter and is adopted in the interests of the community (see *West Coast Hotel Co. v Parrish,* 300 US 379, 391). While there is, of course, a strong presumption of constitutionality, the measure must bear "'some fair, just and reasonable'" relation to the "promotion of the health, comfort, safety and welfare of society" *(Montgomery v Daniels,* 38 NY2d 41, 54, quoting *Nettleton Co. v Diamond,* 27 NY2d 182, 193, app dsmd *sub nom. Reptile Prods. Assn. v Diamond,* 401 US 969). Moreover, it is an accepted proposition that, in the absence of mitigating considerations, an enactment "may not legally \* \* \* diminish \* \* \* or otherwise adversely affect" vested rights *(Roddy v Valentine,* 268 NY 228, 232, citing *Pennie v Reis,* 132 US 464; see *Treigle v Acme Homestead Assn.,* 297 US 189, reh den 297 US 728; *Matter of Chrysler Props. v Morris,* 23 NY2d 515; *Matter of Slewett & Farber v Board of Assessors of County of Nassau,* 80 AD2d 186, 200). The courts in analyzing the due process implications of a law having retroactive effect have weighed two major factors: whether the law is reasonably calculated to serve a compelling public interest (see, e.g., *Worthen Co. v Thomas,* 292 US 426; *Home Bldg. & Loan Assn. v Blaisdell,* 290 US 398) and the extent to which retrospective application creates unfairness (see, e.g., *Pennsylvania Coal Co. v Ma-*

*hon,* 260 US 393; *Forbes Boat Line v Board of Comrs.,* 258 US 338, 340).

In determining whether the public interest to be served by Local Law No. 8 is sufficiently compelling to warrant the heavy burdens it imposes on plaintiffs' existing and contemplated operations, we recognize the high degree of legitimate concern on the part of the town in enacting effective measures to control the location and extent of facilities such as plaintiffs' and in assuring full compliance with stringent operating standards. If the local law provided protection not already afforded by the comprehensive system of State law and regulations for solid waste (ECL art 27, tit 7; 6 NYCRR Part 360) and hazardous waste (ECL art 27, tit 11), by SEQRA (ECL art 8; 6 NYCRR Part 617), by Federal law (US Code, tit 42, ch 82), by the detailed conditions in the existing DEC permits issued to plaintiffs, and by applicable local measures, the public interest to be served by its enactment might be apparent. However, defendant town points to no provision in Local Law No. 8 which would supply some missing element of protection not already present in the various parts of the ECL and its regulations and by the terms of the various existing town laws and ordinances. It seems clear then that the only significance of Local Law No. 8 lies in the provision giving the town board power coextensive with the DEC to grant or deny permits under the applicable ECL provisions and regulations. There is no evidence and no reason to believe that the DEC has not and will not in the future perform its responsibilities faithfully and fairly and with proper concern for the interests of both the town residents and permit applicants. Assuming this to be so, we see no public or local interest to be served by erecting a duplicate structure under which the town board would perform the same function in administering the same statutes and regulations as the DEC. For if the DEC discharges its duties properly, and we must assume that it will, it is difficult to see what additional protection the town and its residents can need or rightfully expect.

Turning to whether the imposition of the requirements of Local Law No. 8 on plaintiffs would be fair and reasonable, we consider first its effect on plaintiffs' existing

operations. It cannot be disputed that plaintiffs have substantial vested rights in their existing DEC and EPA permits, their plants and equipment, and the goodwill and other assets of their existing operations, or that the denial by the town board of a permit under article VI of the local law would result in a closure of these facilities and an impairment of these vested rights (see *Nettleton Co. v Diamond,* 27 NY2d 182, app dsmd *sub nom. Reptile Prods. Assn. v Diamond,* 401 US 969, *supra,* in which the court indicated that retroactive application of the Mason Law to bar the sale of existing inventories would be confiscatory; see, also, *Treigle v Acme Homestead Assn.,* 297 US 189, reh den 297 US 728, *supra; Pennsylvania Coal Co. v Mahon,* 260 US 393, 415, *supra; Roddy v Valentine,* 268 NY 228, 232, *supra).* While the nonconforming use cases cited by plaintiffs are not precisely in point, the principle underlying such cases applies here: once a holder of a building permit for a nonconforming use enters into construction and incurs substantial liabilities in reliance thereon, he has a vested right in the permit which may not be destroyed by revocation thereof (see *City of Buffalo v Chadeayne,* 134 NY 163; *Matter of Clearview Gardens Pool Club v Foley,* 19 AD2d 905, affd 14 NY2d 809). Thus, because the local law if applied to plaintiffs' existing systems could result in a retroactive invalidation of operations theretofore lawfully permitted, it would be confiscatory and, in our opinion, invalid.

We reject the town's argument that notwithstanding the possible confiscatory effect on plaintiffs should it deny them permits, plaintiffs' attack on the local law is premature because their permit applications have not yet been denied or even made. In effect, it contends that plaintiffs must suffer the irreparable and unconstitutional consequences they claim the local law may produce before they may challenge the validity of that law. Plaintiffs' action, however, is for a declaratory judgment and it was precisely to avoid having to subject themselves to the evil complained of in order to prove their case that they are seeking a declaration of their rights in advance. To withhold relief until the plaintiffs' existing facilities have been illegally

closed would defeat the very purpose of the action (see 24 Carmody-Wait 2d, NY Prac, § 147:1).

Although Cecos' proposed new structures for secure disposal of hazardous wastes are not yet in existence or licensed by the DEC, it argues that Local Law No. 8 if applied to these proposed additions would result in a taking of its property without due process of law. The lengthy and costly application procedures and hearings, it maintains, were virtually complete prior to the enactment of Local Law No. 8 on November 25, 1980 and it anticipates favorable action on the applications by DEC. Although a disapproval by the town of the proposed new systems would not result in an abandonment of structures and a loss of investments already made as would a denial of permits for existing operations, plaintiff Cecos asserts that a disapproval would bring to an end its storage of hazardous wastes because two of its existing SCMF's are filled to capacity and have been closed and the remaining SCMF will be filled to its permitted capacity within 30 days of the application date (cf. *Pennsylvania Coal Co. v Mahon, supra*). We are of the opinion, therefore, that Cecos may upon a trial establish that the local law if applied so as to result in a denial by the town board of these planned additions would be unconstitutional (see *Matter of O'Brien v New York State Teachers Retirement Bd.*, 215 App Div 220, affd 244 NY 530).

With respect to the validity of the local law as it may affect future applications for new facilities, the test, as stated, is whether the remedy proposed is reasonable and fair in relation to the evil sought to be remedied (see *Montgomery v Daniels,* 38 NY2d 41, *supra; Matter of Tyson, Inc. v Tyler,* 24 NY2d 671; *Trio Distr. Corp. v City of Albany,* 2 NY2d 690; *Good Humor Corp. v City of New York,* 290 NY 312). Here, a court could find that, in view of the extensive protection already provided by State law and regulations, the town law would so little benefit the public welfare that the imposition on plaintiffs of the burdens of compliance therewith (for example, the duplication of lengthy and costly hearing procedures, preparation of the various engineering and technical reports required, the necessity of demonstrating to the town as well as to the

DEC that the facility will not have an adverse impact on the environment and services of the town, and the bond and insurance requirements) cannot be justified.

### B.

■ We think Special Term properly dismissed plaintiffs' contention that Local Law No. 8 is inconsistent with a general law (viz., "Solid Waste Management and Resource Recovery Facilities Act", ECL art 27, tit 7) and therefore invalid as beyond the authority of the town board to enact local laws under the Municipal Home Rule Law and New York State Constitution.[3] Plaintiffs' claim is that Local Law No. 8 not only duplicates the procedural provisions of ECL article 27 (tit 7) and the applicable regulations but establishes the town board as the final arbiter in the DEC permitting process and thus effectively usurps the DEC's regulatory authority within the Town of Niagara and "for all intents and purposes, nullifies the corresponding procedural" aspects of title 7 within the town. The claim is that even though Local Law No. 8 does not purport to supersede or contradict the general law, it is nevertheless incompatible or inharmonious with it and therefore so inconsistent as to render it invalid (see *Town of Clifton Park v C.P. Enterprises,* 45 AD2d 96). We disagree.

Where there is no pre-emption by State law, a local law "may [not] be said to be inconsistent with [the] State law [merely] because it prohibits something which the State law would consider acceptable" *(Monroe-Livingston Sanitary Landfill v Town of Caledonia,* 51 NY2d 679, 683). It was settled in *Monroe-Livingston Sanitary Landfill v Town of Caledonia (supra)* that ECL article 27 (tit 7) dealing with solid waste disposal does not attempt to pre-empt the regulation of solid waste and industrial waste management. There the court noted that the statute speaks specifically not of the preclusion but rather of "the inclusion of local government in the planning and control of problems endemic to waste management (ECL 27-0101, subds 1, 2; 27-0703, subd 3; 27-0707, subds 3, 4)." *(Monroe-Livingston*

---

3. Municipal Home Rule Law, § 10, subd 1, par (i), and NY Const, art IX, § 2, subd (c), par (i) give to local governments the power "to adopt and amend local laws *not inconsistent with* * * * any general law relating to its property, affairs, or government" (emphasis added).

*Sanitary Landfill v Town of Caledonia, supra,* pp 683-684.) Indeed, ECL 27-0711 expressly preserves the rights of local municipalities to adopt local laws pertaining to solid waste facilities "not inconsistent with" any provision in ECL article 27 (tit 7) or regulation adopted thereunder. Moreover, the statute provides that any local law complying "with at least the minimum applicable requirements" of title 7 or any rule or regulation promulgated thereunder "shall be deemed consistent with" title 7 or such rule or regulation (ECL 27-0711).

Because all of the measures in Local Law No. 8 are expressly stated to be in addition to those contained in ECL article 27 (tit 7) and its implementing regulations, Local Law No. 8 necessarily meets the minimum applicable requirements of title 7 and the regulations thereunder and, therefore, fits the specific definition of consistency with title 7 established by the statute (ECL 27-0711).[4] Nor is Local Law No. 8 inconsistent with the State law and, therefore, invalid under *Monroe-Livingston Sanitary Landfill v Town of Caledonia (supra)* as permitting something which the State law forbids.

C.

We concur with Special Term's conclusion that the local

---

4. Another part of ECL article 27, however, not referred to by any party, appears to present a significantly stronger basis for finding an inconsistency between the local law and a general law, specifically title 11 (Industrial Siting Hazardous Waste Facilities). Local Law No. 8 by its express terms applies to industrial and hazardous wastes and adopts as its definition of industrial waste the definition of the term in title 11 (ECL 27-1101). The definition of "industrial hazardous waste treatment, storage and disposal facility" in ECL 27-1101 by its terms includes facilities of the type operated by Cecos as well as the sanitary landfills maintained by Newco. Title 11, which deals with the siting of hazardous waste facilities, contains no provision corresponding to ECL 27-0711 expressly permitting local governments to enact local laws not inconsistent with title 7 (Solid Waste Management and Resource Recovery Facilities) or the regulations adopted thereunder. On the contrary, title 11, dealing with hazardous waste facilities, contains a provision expressly prohibiting any municipality "except as expressly authorized by this article or the board" from requiring "any approval, consent, permit, certificate or other condition regarding the operation of a [hazardous waste] facility with respect to which a certificate hereunder has been granted" (ECL 27-1107). The power given to municipalities in ECL 27-0711 to enact local laws not inconsistent with title 7 or the regulations thereunder would not appear to be the express authorization called for by ECL 27-1107 that a municipality must have if it seeks to approve or to impose its own permit requirements on hazardous waste operations. The Legislature has evidently decided to grant more authority to local governments to legislate in the field of solid waste management than in the field of hazardous waste treatment, storage and disposal facilities. In view of our decision to grant the preliminary injunctions for other reasons and inasmuch as the inconsistency with title 11 has not been argued, we need not reach the issue.

law does not impose an undue burden on interstate commerce in violation of section 8 of article I of the United States Constitution (see *Monroe-Livingston Sanitary Landfill v Town of Caledonia, supra; Dutchess Sanitation Serv. v Town of Plattekill,* 51 NY2d 670). The simple answer to plaintiffs' argument is that the legislation does not discriminate against interstate commerce. Unlike the New Jersey statute prohibiting the importation of out-of-State wastes in *Philadelphia v New Jersey* (437 US 617), Local Law No. 8 applies to all wastes without regard to the source. Like the Minnesota statute forbidding the sale of milk in plastic, nonreturnable containers upheld in *Minnesota v Clover Leaf Creamery Co.* (449 US 456) it "regulates evenhandedly" without regard to the location of the customers or to the origin of the waste materials brought into the town (see *Head v New Mexico Bd.,* 374 US 424; *Huron Cement Co. v Detroit,* 362 US 440). There can be, therefore, no claim that the law is invalid on its face. Nor can it be said that it indirectly imposes an unlawful burden on interstate commerce as did the ordinance prohibiting the importing of out-of-State town refuse struck down in *Dutchess Sanitation Serv. v Town of Plattekill (supra).* There, the condemned provision sought to "regulate garbage on no criterion except its place of origin" and in the absence of any reason, "to treat the out-of-town garbage differently from an equivalent quantity of the local product" *(Dutchess Sanitation Serv. v Town of Plattekill, supra,* p 677). The court found the provision invalid because there were alternatives to prohibiting out-of-town garbage less burdensome to interstate commerce which the town might have employed as, for example, "inspection carried out either by town officials or by the State Department of Environmental Conservation, or through nondiscriminatory, across-the-board limitation on the quantity, type or state of waste to be deposited or excluded" *(supra,* p 677). Local Law No. 8 clearly provides the type of less burdensome alternative suggested by the court — a "nondiscriminatory across-the-board" regulation.

IV.

■ ■ Special Term's conclusion that plaintiffs would suffer no irreparable injury from the application of Local

Law No. 8 "because their present operations are not affected by its provisions" is based on a misreading of the enactment. As noted, its provisions expressly apply to existing operations. The nature and extent of the licensed facilities of Cecos and Newco and the number, type and location of the various industries and municipalities they serve have been described in detail. We have interpreted Local Law No. 8 as giving the town board the power to close down plaintiffs' present operations by denying a permit upon its finding that an applicant has not complied with ECL article 27 standards even though the DEC, upon the same data, has found compliance and issued a permit. We think plaintiffs' affidavits and those of its customers pertaining to the anticipated consequences from such a stoppage of plaintiffs' activities meet fully the requirement of a showing of irreparable injury under *Gambar Enterprises v Kelly Servs.* (69 AD2d 297, *supra), Town of Porter v Chem-Trol Pollution Servs.* (60 AD2d 987, *supra)* and *Tucker v Toia* (54 AD2d 322, *supra)*.

v.

Whether the equities weigh so heavily in favor of plaintiffs' cause as to require a reversal of Special Term's discretionary order poses a troublesome question. We acknowledge the unquestionably worthy purpose of Local Law No. 8, viz., "to protect the inhabitants of the Town of Niagara through an exercise of its police powers by regulating the siting of solid waste disposal, incineration, recycling operations, solid waste management facilities and sanitary landfills and by requiring maximum utilization of safety and health factors to insure the continued well-being of the town citizenry and to insure that the environment will not be adversely affected when such facilities are situated within a zoning use district in the Town of Niagara, regardless of the district's designation under existing zoning ordinances." (Local Laws, 1980, No. 8 of Town of Niagara, art I, subd 2.) Indeed, the Legislature has expressly recognized the right of local governments to regulate waste disposal and management operations (ECL 27-0711) by supplementing State statutes and regulations with appropriate local measures.

We have concluded, however, that at least as to its effect on plaintiffs' presently licensed facilities, there is a substantial likelihood that Local Law No. 8 will be found unconstitutional under the due process clauses of the United States and New York State Constitutions. For this reason, in view of the far-reaching and irreparable damage that could result to plaintiffs Cecos and Newco and their customers if the injunction is not granted pending the ultimate resolution of the constitutional issues, we think it was error to deny plaintiffs' application.[5]

Because plaintiffs' application for a temporary injunction should be granted, it follows that defendant's motion for an injunction to compel compliance with Local Law No. 8 was properly denied. The order insofar as it grants plaintiffs' cross motion for an order pursuant to CPLR 3211 (subd [a], par 4) dismissing the town's counterclaims on the ground that there is another action pending between the same parties for the same relief should be affirmed, without prejudice, however, to the right of the town, if it be so advised, to move in the pending action in which it is plaintiff to add Cecos as a party defendant and to amend its complaint therein by adding the alleged violations of Niagara Building Code, Local Law No. 4 of 1979, and section 2 of Niagara Zoning Ordinance (see Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C3211:15).

The order appealed from should be modified in accordance herewith and as modified, affirmed.

DILLON, P. J., CALLAHAN, DOERR and SCHNEPP, JJ., concur.

Order unanimously modified and as modified, affirmed, without costs, in accordance with opinion by HANCOCK, JR., J.

---

5. Although only two of plaintiffs (Cecos and Newco) are operators of commercial waste disposal and management facilities, all four plaintiffs hold permits from the DEC. The claims of irreparable injury on the part of the lessors, Niagara Recycling, Inc., and W.L.R. Chemical Waste Realty, would, standing alone, in all likelihood not be sufficient to warrant a preliminary injunction. Nevertheless, the lessor plaintiffs would sustain damage as a result of an unlawful denial of the permits by the town board. Because we are granting the preliminary injunction as to Cecos and Newco, there would be no purpose in excluding the lessor plaintiffs from its scope.