Louis Moran, Appellant, v Village of Philmont et al., Respondents. (Action No. 1.)

Village of Philmont, Respondent, v Louis Moran, Appellant, et al., Defendant. (Action No. 2.)

Third Department, June 22, 1989

## APPEARANCES OF COUNSEL

*Reisch, Simoni, Bythewood & Gleason (David A. Bythewood* of counsel), for appellant.

*Connor, Curran & Schram (John G. Connor, Jr.,* of counsel), for respondents.

## OPINION OF THE COURT

WEISS, J.

In July 1988, the Board of Trustees of the Village of Philmont, Columbia County (hereinafter Board), enacted Local Laws, 1988, No. 2 (hereinafter Local Law No. 2) prohibiting the operation of private landfills within the municipal limits of the village. Our primary inquiry is whether Supreme Court properly upheld the constitutionality of this ordinance and enjoined Louis Moran from dumping or permitting others to dump debris on property he owns within the village. A brief history is in order.

Moran's 12-acre parcel of land is divided by a ravine comprising approximately eight acres.* In September 1987, Moran advised the Board of his plan to reclaim the ravine by filling same with construction and demolition debris. The Board acknowledged that there was no prohibition against such an operation. On April 19, 1988, Moran commenced the project, authorizing New York Demolition Company, Inc. to deposit construction and demolition debris in the ravine. Moran ostensibly gave advance notice to the Department of Environmental Conservation and received a temporary exemption *(see,* 6 NYCRR 360.1 [f] [1] [x]). Following the enactment of Local Law No. 2, the village served a notice of violation on Moran in August 1988. In the interim, Moran commenced an action against the village seeking, insofar as here pertinent, to declare Local Law No. 2 constitutionally invalid (action No. 1). After joinder of issue, Moran moved for partial summary judgment to invalidate the ordinance due to the village's failure to comply with the State Environmental Quality Re-

---

* Moran's sister was originally a co-owner of the parcel but apparently conveyed her interest to Moran during the course of this litigation.

view Act (hereinafter SEQRA). The village cross-moved for summary judgment seeking to have the ordinance declared valid. Additionally, the village commenced a second action to permanently enjoin Moran from violating the ordinance (action No. 2). Supreme Court granted the village's cross motion for summary judgment and enjoined Moran from any further dumping operations. When the dumping persisted, the Village successfully obtained an order of contempt against Moran, who was directed to pay a $250 fine and $500 in expenses, and to further remove 1,750 tons of debris from the site. Moran has appealed both orders.

■ ■ Initially, we disagree with Supreme Court's assessment that Moran lacked standing to question the Village's compliance with SEQRA. Although we agree that Moran merely demonstrated economic and not environmental harm, SEQRA speaks to both consequences (see, ECL 8-0109 [1]; cf., Matter of New York State Bldrs. Assn. v State of New York, 98 Misc 2d 1045, 1049; Weinberg, Practice Commentary, McKinney's Cons Laws of NY, Book 17½, ECL C8-0109:6, at 79). Since Moran clearly has standing to challenge the subject ordinance, that authority includes a full review of the procedures underlying its enactment. Nonetheless, we perceive no error in the Village's issuance of a negative declaration. An environmental impact statement is only required where an action may have a *significant* effect on the environment (ECL 8-0109 [2]; see, Chinese Staff & Workers Assn. v City of New York, 68 NY2d 359, 364-365). Here, the record confirms that the Village took a "hard look" at the potential environmental effects and rationally determined that no adverse consequences would flow from the ordinance (see, Matter of New Scotland Ave. Neighborhood Assn. v Planning Bd., 142 AD2d 257, 263). Consequently, our SEQRA inquiry is concluded (see, supra).

■ Moran essentially challenges the ordinance as unconstitutionally confiscatory in that it retroactively invalidates a previously authorized dumping operation (see, e.g., Niagara Recycling v Town of Niagara, 83 AD2d 316; 1 Anderson, New York Zoning Law and Practice § 6.05, at 203 [3d ed]). The contention is not persuasive. Our analysis begins with the premise that a zoning ordinance enjoys a strong presumption of constitutionality (see, de St. Aubin v Flacke, 68 NY2d 66, 76). The fact that an ordinance effectively reduces the value of a parcel does not render it confiscatory (supra, at 77; Seawall Assocs. v City of New York, 142 AD2d 72, 84-86). Moreover,·

local governments enjoy broad police powers to advance the public health, safety and welfare *(see, Matter of Town of Islip v Caviglia,* 73 NY2d 544, 550). In today's society, it can hardly be doubted that municipalities may regulate the disposal of refuse materials *(see,* ECL 27-0711; *Monroe-Livingston Sanitary Landfill v Caledonia,* 51 NY2d 679). In an instance, as here, where solid waste materials are being deposited within a residential community, the potential hazards are obvious. While we recognize that Local Law No. 2 effects a complete prohibition of private landfills, we find that the ordinance constitutes a valid health and safety measure within the scope of the village's police powers *(see, Town of LaGrange v Giovenetti Enters.,* 123 AD2d 688, 689; *Town of Plattekill v Dutchess Sanitation,* 56 AD2d 150, *affd* 43 NY2d 662; *see also, Town of Hempstead v Goldblatt,* 9 NY2d 101). This holds true notwithstanding the impact on Moran's existing operation *(see, supra).* Although Moran claims otherwise, we do not perceive a substantial vested interest in the dumping operation *(cf., Niagara Recycling v Town of Niagara,* 83 AD2d 316, 327-328, *supra).* No showing was made of any expenditures on his part. Also, a very serious question is raised as to whether a valid nonconforming use existed *(see,* 1 Anderson, New York Zoning Law & Practice § 6.09, at 212 [3d ed]). A construction and demolition debris exemption anticipates compliance with certain regulatory guidelines, including the fencing of access areas *(see,* 6 NYCRR 360.1 [f] [1] [x]; 360.8 [a] [6]). Moran did not satisfy this condition. Even more troublesome is the strong indication that refuse materials other than approved construction debris were being deposited in the ravine. Consequently, we reject Moran's characterization of Local Law No. 2 as a retroactive invalidation of an established, nonconforming use.

■ We further uphold Supreme Court's contempt finding against Moran. The record shows that from October 30, 1988 to November 3, 1988 over 80 tractor-trailer trucks dumped debris into the ravine, despite the existing injunction. Moran's attempt to avoid responsibility for this continuing infraction on the premise that New York Demolition controlled the property pursuant to a lease agreement is entirely unpersuasive. By its terms, the purported "lease" terminated upon written notice of a court order prohibiting the operation. Thus, a simple notice to New York Demolition of the existing injunction would have terminated its interest. Parenthetically, for Moran to raise this defense and simultaneously argue that

Supreme Court lacked authority to interpret the "lease" agreement is illogical at best. In sum, Moran failed to demonstrate that he was unable to control the parcel and prevent further dumping *(see, United States v Rylander,* 460 US 752). As such, he was properly held in contempt.

■ This brings us to the penalty imposed and, in particular, the directive to remove 1,750 tons of debris, the approximate amount dumped following issuance of the injunction. Moran challenges this penalty as punitive and unauthorized in a civil contempt context. We recognize that a fine for civil contempt must be remedial in nature and designed only to compensate the aggrieved party *(see,* Judiciary Law § 773; *State of New York v Unique Ideas,* 44 NY2d 345, 349; *State of New York v Congress of Racial Equality [C.O.R.E.],* 92 AD2d 815, 817). Nonetheless, we do not find the removal directive punitive in nature. The order speaks only to the postinjunction damage and is designed to remedy the actual harm occasioned by Moran's defiance of the injunction. In our view, the penalty was appropriate *(see, Ellenberg v Brach,* 88 AD2d 899, 901-902).

MAHONEY, P. J., MIKOLL, YESAWICH, JR., and LEVINE, JJ., concur.

Orders affirmed, without costs.